# United States Court of Appeals
# for the Federal Circuit

---

**AUSTRALIAN THERAPEUTIC SUPPLIES PTY. LTD.,**
*Appellant*

**v.**

**NAKED TM, LLC,**
*Appellee*

---

2019-1567

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92056381.

---

Decided: July 27, 2020

---

JAMES ROBERT MENKER, Holley & Menker, P.A., Atlantic Beach, FL, argued for appellant.

SUZANNE D. MEEHLE, Meehle & Jay PA, Orlando, FL, argued for appellee. Also represented by EMILY BEHZADI, DAVEY T. JAY.

---

Before O'MALLEY, REYNA, and WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* REYNA.

Dissenting opinion filed by *Circuit Judge* WALLACH.

REYNA, *Circuit Judge.*

The Trademark Trial and Appeal Board determined that Australian Therapeutic Supplies Pty. Ltd. ("Australian") lacks standing to petition for cancellation of a trademark registration. The Board reasoned that Australian could not show an interest in the cancellation proceeding or a reasonable belief of damage because it had contracted away its proprietary rights in its unregistered marks. We disagree. An absence of proprietary rights does not in itself negate an interest in the proceeding or a reasonable belief of damage. We hold that a petitioner seeking to cancel a trademark registration establishes an entitlement to bring a cancellation proceeding under 15 U.S.C. § 1064 by demonstrating a real interest in the cancellation proceeding and a reasonable belief of damage regardless of whether petitioner lacks a proprietary interest in an asserted unregistered mark. Because Australian has a real interest in the cancellation proceeding and a reasonable belief of damage, Australian satisfies the statutory requirements to seek cancellation of a registered trademark pursuant to § 1064. We reverse and remand.

BACKGROUND

A

Australian first adopted the mark NAKED for condoms in early 2000 and started advertising, promoting, and selling condoms with the marks NAKED and NAKED CONDOM (collectively, the "unregistered mark") in Australia. Starting as early as April 2003, Australian, through its website, began advertising, selling, and shipping condoms featuring its unregistered mark to customers in the United States. *See* J.A. 10.

Naked TM, LLC, ("Naked") owns Registration No. 3,325,577 for the mark NAKED for condoms. In late 2005, Australian learned that Naked's predecessor-in-interest

(herein also referred to as "Naked") had filed a trademark application for NAKED condoms on September 22, 2003. On July 26, 2006, Australian contacted Naked and claimed rights in its unregistered mark. From July 26, 2006, to early 2007, Australian and Naked engaged in settlement negotiations via email correspondence.

Naked asserts that the email communications demonstrate that the parties reached an agreement whereby Australian would discontinue use of its unregistered mark in the United States and consent to Naked's use and registration of its NAKED mark in the United States. *See* Appellee Br. 6 (citing J.A. 1541; J.A. 1543; J.A. 1551; J.A. 1553–56; J.A. 1587; and J.A. 1748–49). Australian disagrees and counters that no agreement exists because the parties did not agree on the final terms of a settlement. Appellant Br. 8–9 (citing J.A. 121–26, J.A. 486–508).

B

Notwithstanding the settlement discussions, in 2006, Australian filed a petition to cancel registration of the NAKED mark. The petition, as amended, asserted Australian's prior use of the mark and sought cancellation on the grounds of fraud, likelihood of confusion, false suggestion of a connection, and lack of bona fide intent to use the mark. Naked filed a response, denied the allegations in Australian's amended petition, and asserted numerous affirmative defenses, including that Australian lacked standing to seek cancellation and that Australian was contractually and equitably estopped from pursuing the cancellation.

Naked moved for summary judgment on its affirmative defenses of contractual and equitable estoppel, laches, acquiescence, and unclean hands. Australian cross-moved for summary judgment on grounds of likelihood of confusion under the Lanham Act § 2(d), 15 U.S.C. § 1052(d), and asserted that Naked's affirmative defenses are inapplicable because Naked's use of the NAKED mark would result

in inevitable confusion with Australian's unregistered mark.

The Board denied summary judgment on grounds that a genuine issue of material fact existed with respect to Australian's standing and with respect to Naked's affirmative defense of contractual estoppel. The Board also opined that a finding of confusion would be likely if Australian could establish standing and priority. The Board advised the parties to focus efforts at trial on the issues of standing and priority.

On December 21, 2018, following trial, the Board concluded that Australian lacked standing to bring a petition for cancellation. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, CANCELLATION No. 92056381, 2018 WL 6929683, at \*11 (T.T.A.B. Dec. 21, 2018) (hereinafter "*Decision*"). The Board reasoned that, in order to show that it had standing, Australian was required to establish proprietary rights in its unregistered mark. *See id.* at \*2 (citing *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317 (C.C.P.A. 1981)). The Board concluded that Australian failed to establish proprietary rights in its unregistered mark and thus lacked standing. *See id.* at \*11.

The Board found that, although no formal written agreement existed, the parties entered into an informal agreement through email communications and the parties' actions. *Id.* at \*6–8, \*9. According to the Board, Australian agreed it would not use or register its unregistered mark in the United States and that Naked could use and register its NAKED mark in the United States. *Id.* at \*11. The Board found that Australian led Naked to "reasonably believe that [Australian] had abandoned its rights in the United States to the NAKED mark in connection with condoms." *Id.* at \*9. Although the Board made no finding on whether Australian agreed not to challenge Naked's use and registration of the NAKED mark, the Board concluded that Australian lacked standing to petition to cancel the

NAKED mark because Australian could not establish a real interest in the cancellation or a reasonable basis to believe it would suffer damage from the continued registration of the NAKED mark. *Id.* at \*11.

Australian timely appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We note at the outset that the Supreme Court has clarified that there are certain issues that are discussed in terms of "standing" that are more appropriately viewed as requirements for establishing a statutory cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). That is the case here. The Board discussed the requirements to bring a cancellation proceeding under 15 U.S.C. § 1064 in terms of "standing" instead of a statutory entitlement to a cause of action under 15 U.S.C. § 1064. *Cf.*, *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014) (citing *Lexmark*, 572 U.S. at 125–28).

We review de novo whether Australian has established entitlement to a statutory cause of action under § 1064. *Empresa Cubana*, 753 F.3d at 1274 (citing *Lexmark*, 572 U.S. at 128 (applying "traditional principles of statutory interpretation" to determine whether party has a cause of action under the statute)). Section 1064 provides that a petitioner may seek cancellation of a registered trademark if the petitioner "believes that he is or will be damaged" by the registered trademark. § 1064. The statutory requirements to cancel registration of a mark under § 1064 are substantively equal to the statutory requirements to oppose the registration of a mark under § 1063: both require a party to demonstrate a real interest in the proceeding and a reasonable belief of damage. *See Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998) ("The linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that we

construe the requirements of these provisions consistently."); *see also Empresa Cubana*, 753 F.3d at 1275 ("A petitioner is authorized by statute to seek cancellation of a mark where it has both a real interest in the proceedings as well as a reasonable basis for its belief of damage." (internal quotation marks and citation omitted)).

## A. Proprietary Rights

The Board's conclusion that Australian lacked entitlement to bring a cancellation proceeding against a registered mark because it does not have proprietary rights in its unregistered mark is erroneous.  Entitlement to a cause of action under § 1064 is not contingent on whether a petitioner has proprietary rights in its own mark.

Here, the Board required that Australian establish proprietary rights in its unregistered mark in order to demonstrate a cause of action under § 1064.  This was error.  Neither § 1064 nor our precedent requires that a petitioner have a proprietary right in its own mark in order to demonstrate a cause of action before the Board.  *See Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987).  For example, in *Jewelers*, we explained that a trade association may have standing to oppose a mark's registration "without [having] proprietary rights in a mark."  823 F.2d at 493; *see also* TBMP § 309.03(b) ("A plaintiff need not assert proprietary rights in a term in order to have standing.").  This is true "irrespective of the grounds [of nonregistrability] upon which the opposer relies." *Jewelers*, 823 F.2d at 493; *but cf. Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002) (explaining that proprietary rights are necessary to show *priority of use* when petitioning for cancellation under section 2(d)); TBMP § 309.03(c)(2) (discussing priority of use and proprietary rights).

The Board determined that Australian had contracted away its right to use and register its unregistered mark. *Decision* at *11.  Contracting away one's rights to use a

trademark does not preclude a petitioner from challenging a mark before the Board. *See Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1323–25 (Fed. Cir. 1983) (holding that challenger established standing under § 1064 notwithstanding the parties' written agreement not to challenge each other's registration or each other's rights to use and sell goods under the mark). While an agreement could ultimately bar Australian from proving *actual* damage, § 1064 requires only a *belief* of damage. *See id.* at 1324–25.

The Board relied on *Otto Roth & Co. v. Universal Foods*, 640 F.2d 1317 (C.C.P.A. 1981), as support for its determination that proprietary rights are required for standing. *Decision* at *2. *Otto Roth*, however, dealt with the merits of an opposition, not a party's right to participate in the opposition proceedings. *See Jewelers*, 823 F.2d at 494 (discussing *Otto Roth*). Our decision in *Otto Roth* does not require a party to establish proprietary rights in a mark in order to meet the statutory requirements to challenge a mark. *Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 520 (Fed. Cir. 1987) (discussing the Board's erroneous reliance on *Otto Roth*).

In sum, neither § 1064 nor our precedent requires that a petitioner in a cancellation proceeding must prove that it has proprietary rights in its own mark in order to demonstrate a real interest in the proceeding and a belief of damage. The Board's decision to the contrary is therefore erroneous. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012).

B. Real Interest and
Reasonable Belief of Damage

We next consider whether Australian has a real interest and reasonable belief of damage such that it has a cause of action under § 1064.

A petitioner may demonstrate a real interest and reasonable belief of damage where the petitioner has filed a trademark application that is refused registration based on a likelihood of confusion with the mark subject to cancellation. *See Empresa Cubana*, 753 F.3d at 1274–75. In *Empresa Cubana*, we held that the petitioner met the statutory requirements to petition for cancellation of a mark where the USPTO refused petitioner's trademark application based on a likelihood of confusion with a registered mark. *Id.* at 1275. We reasoned that petitioner's trademark application constitutes a "legitimate commercial interest," satisfying the real interest requirement. *Id.* (citing *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (C.C.P.A. 1982)). We also reasoned that the "blocking" of the petitioner's application satisfied the belief of damage requirement. *Id.*

A petitioner may also demonstrate a real interest and reasonable belief of damage by producing and selling merchandise bearing the registered mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (citing *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984)).

Here, like in *Empresa Cubana*, Australian demonstrates a real interest in the proceeding because it twice filed an application to register its unregistered mark, first on November 21, 2005,[1] and then on November 6, 2012.[2] Australian also demonstrates a belief of damage because the USPTO refused registration of both the '237 and '589 applications based on a likelihood of confusion with Naked's registered mark, U.S. Registration No. 3,325,577.[3]

---

[1]    U.S. Application Serial No. 78,758,237.

[2]    U.S. Application Serial No. 85,772,589.

[3]    *See* March 3, 2011, Office Action, U.S. Trademark Application Serial No. 78/758,237 (refusing registration of

The USPTO has also suspended prosecution of the '589 application pending termination of the present cancellation proceeding (J.A. 1105), further demonstrating a belief of damage. Australian's applications for registration, the USPTO's refusal of registration, and the USPTO's suspension of prosecution support a conclusion that Australian meets the statutory requirements under § 1064. *See Empresa Cubana*, 753 F.3d at 1275.

Naked argues that Australian's applications do not support a cause of action under § 1064 because Australian abandoned its '237 application and because Australian filed its '589 application in a "post filing," "futile attempt to establish its standing." Appellee Br. 24–26. Naked also argues that "mere ownership of a pending application does not in itself provide standing to oppose other applications." *Id.* at 24–25. We are not persuaded.

First, a trademark owner does not abandon her rights in a mark by abandoning prosecution. *See* 37 C.F.R. § 2.68(b) ("[T]he fact that an application has been expressly abandoned shall not affect any rights that the applicant may have in the mark set forth in the abandoned application in any proceeding before the Office."); s*ee also C & N Corp. v. Kane*, 953 F. Supp. 2d 903, 911 (E.D. Wis. 2013), *aff'd sub nom. C & N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024 (7th Cir. 2014).

Second, Australian's advertising and sales in the United States also demonstrate a real interest and reasonable belief of damage. The Board found that Australian "has proven that it has advertised and sold NAKED condoms in the United States through [its] websites since April 2003." *Decision* at *5. This finding is supported by

the '237 application); J.A. 1096–103 (refusing registration of the '589 application).

substantial evidence[4] and demonstrates Australian's real interest and reasonable belief of damage.  *See Cunningham*, 222 F.3d at 945.

Naked questions the sufficiency of Australian's commercial activity because Australian's marketing and advertising activities are "isolated," "limited," and "de minimis," and its sales are "sporadic" and "nominal." Appellee Br. 19–22; *see also Decision* at \*10 (characterizing Australian's internet sales in the United States as "de minimis").  Section 1064 does not, however, impose a minimum threshold of commercial activity, nor do we define one here.  The real interest requirement is meant to prevent litigation where there is no real controversy between the parties, "where a plaintiff, petitioner or opposer, is no more than an intermeddler." *Jewelers*, 823 F.2d at 492.  Australian's advertising and sales of NAKED condoms in the United States since April 2003, coupled with its pending application for registration of its unregistered mark, demonstrates that Australian is not a mere intermeddler; these acts instead demonstrate a real interest and reasonable belief of damage, as contemplated for a cause of action under 15 U.S.C. § 1064.  The Board, therefore, erred as a matter of law when it determined that Australian lacks standing in the proceeding for cancellation of Naked's registered mark.

## CONCLUSION

We have considered Naked's remaining arguments and find them unpersuasive.  We hold that the Board erred when it determined that Australian must have proprietary rights in its unregistered mark in order to establish a cause

---

4    *See* J.A. 162–65 (images of advertisements of condoms bearing the NAKED mark on Australian's website), 169–280 (identifying several U.S. sales from Australian's website for each month between April to December 2003).

of action under § 1064.  We also conclude that based on the facts established before the Board, Australian has a real interest in the cancellation proceeding and a reasonable belief of damage, thereby satisfying the statutory requirements to seek cancellation of a registered trademark. We reverse and remand to the Board for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

———————————

**AUSTRALIAN THERAPEUTIC SUPPLIES PTY. LTD.,**
*Appellant*

**v.**

**NAKED TM, LLC,**
*Appellee*

———————————

2019-1567

———————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92056381.

———————————

WALLACH, *Circuit Judge*, dissenting.

The U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board (the "Board") concluded that Appellant Australian Therapeutic Supplies Pty. Ltd. ("Australian") had "failed to prove that it has standing" under 15 U.S.C. § 1064 to petition for cancellation of Appellee Naked TM, LLC's ("Naked") registration of the trademark "NAKED (typed drawing) for 'condoms,'" bearing the Registration Number 3,325,577. *Australian Therapeutic Supplies Pty. Ltd.*, No. CANCELLATION 9205638, 2018 WL 6929683, at *1, *11 (T.T.A.B. Dec. 21, 2018). The Majority reverses and remands, holding that "the Board erred when it determined that Australian must

have proprietary rights" to petition for cancellation under § 1064, and "that[,] based on the facts established before the Board, Australian has a real interest in the cancellation proceeding and a reasonable belief of damage, thereby satisfying the statutory requirements to seek cancellation" under 15 U.S.C. § 1064. Maj. Op. 11. Although I agree with the Majority that a party is not required to prove a proprietary interest, I do not agree that the Board required a proprietary interest from Australian or that Australian met its burden of proving a real interest and a reasonable belief in damages. Because I would affirm the Board's determination, I respectfully dissent.

## DISCUSSION

### I. To Have a Cause of Action Under 15 U.S.C. § 1064, a Petitioner Need Not Have a Proprietary Interest, but Must Have a Legitimate Interest

"A petition to cancel a registration of a mark . . . may . . . be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark[.]" 15 U.S.C. § 1064. We have construed this to mean that "[a] party seeking cancellation must prove . . . that it has standing[.]" *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (citations omitted). Statutory standing is a question of "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 127 (2014). For the purposes of 15 U.S.C. § 1064, a petitioner must show that "it has both a real interest in the proceedings . . . [and] a reasonable basis for its belief of damage." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1275 (Fed. Cir. 2014) (internal quotation marks and citation omitted). "[A] real interest in the proceeding" means the petitioner has "a legitimate personal interest" in the cancellation. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012) (internal quotation marks and citation omitted). "[A] reasonable

basis" for belief of damage means the petitioner's "belief of damage" has "a reasonable basis in fact." *Id.* (internal quotation marks and citation omitted).

"[T]he reasonableness of [a petitioner's] belief of damage may be shown in several ways." *Ritchie v. Simpson*, 170 F.3d 1092, 1098 (Fed. Cir. 1999) (discussing statutory standing to oppose, under 15 U.S.C. § 1063, registration of a mark)[1]; *see Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028 (C.C.P.A. 1982) ("No absolute test can be laid down for what must be proved to establish standing as a petitioner in a cancellation proceeding or as an opposer in an opposition."). "In the usual case, where [a cancellation] is brought under [15 U.S.C. § 1052(d)], the [petitioner] ha[s] a proprietary interest in [the] mark [at issue], and standing is afforded through its assertion that it will incur some direct injury to its own established trade identity." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987); *see* 15 U.S.C. § 1052(d) (providing that "[n]o trademark . . . shall be refused registration . . . unless it[] [c]onsists of . . . a mark which so resembles a mark [already] registered . . . or . . . previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive"). However, "[p]roprietary rights . . . are not required." *Jewelers*, 823 F.2d at 493. A reasonable belief in damage "can be shown by establishing a direct commercial interest," *Cunningham*, 222 F.3d at 945 (citing *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984)), such as the "longtime

---

[1]    "The linguistic and functional similarities between the opposition and cancellation provisions of [15 U.S.C. §§ 1063, 1064] mandate that we construe the requirements of these provisions consistently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998).

production and sale of merchandise with the [mark]" at issue, with "an equal right [to] that of [registrant-approved retailers] to use the [mark]," *Job's Daughters*, 727 F.2d at 1092, or "own[er]s[hip]" and use of potentially similar "prior registrations," *Cunningham*, 222 F.3d at 945. These requirements are meant to "prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner[,] or opposer, is no more than an intermeddler." *Jewelers*, 823 F.2d at 492 (quoting *Lipton*, 670 F.2d at 1029–30). The Majority and I agree this far. *See* Maj. Op. 6 ("Entitlement to a cause of action under § 1064 is not contingent on whether a [p]etitioner has proprietary rights in its own mark.").

The Majority neglects, however, that whatever commercial interest the petitioner asserts, it must be a "legitimate commercial interest," *Empresa Cubana*, 753 F.3d at 1275; *see Coach*, 668 F.3d at 1376 (requiring "a legitimate personal interest" (internal quotation marks and citation omitted)); *Ritchie*, 170 F.3d at 1095–97 (similar); *Lipton*, 670 F.2d at 1029 (similar), that is rooted in "fact[]" and "affirmatively proved," *Ritchie*, 170 F.3d at 1099 (citing *Lipton*, 670 F.2d at 1028); *see Lipton*, 670 F.2d at 1028 ("The facts regarding standing, we hold, are part of a petitioner's case and must be affirmatively proved."). A petitioner may be deprived of a "legitimate commercial interest" under § 1064 if such interest is precluded by a prior judgment, *see Empresa Cubana*, 753 F.3d at 1274–75 (explaining that a petitioner was not prevented from bringing cancellation proceedings before the Board because a relevant prior judgment "specifically did *not* address whether [the petitioner] could seek cancellation of the [registrations at issue]"), or a prior settlement agreement, *see Danskin, Inc. v. Dan River, Inc.,* 498 F.2d 1386, 1387 (C.C.P.A. 1974) (concluding that a petitioner could not, as a matter of law, seek cancellation of a mark because it had entered a prior settlement agreement with the registrant to "not oppose or petition to cancel directly or indirectly any registration" by that registrant);

*see also Wells Cargo, Inc. v. Wells Cargo, Inc.*, 606 F.2d 961, 965 (C.C.P.A. 1979) ("If there [is] a policy favoring challenges to trademark validity, it too has been viewed as outweighed by the policy favoring settlements.").

## II. Australian Failed to Prove a Real Interest and a Reasonable Belief in Damages

Australian was required to plead and prove "a real interest in the proceedings . . . [and] a reasonable basis for its belief of damage." *Empresa Cubana*, 753 F.3d at 1275; *see Ritchie*, 170 F.3d at 1099. It did not. Australian argued, and continues to argue on appeal, that it has standing based on its commercial interest in the NAKED mark. Appellant's Br. 22 ("[Australian] has a direct commercial interest in this proceeding as a result of its prior and continuing use of the NAKED [and NAKED CONDOMS] [m]arks in the advertising, marketing, and the offering for sale of condoms on its websites."); J.A. 59 (Amended Petition to Cancel) (similar). It offered evidence that it has advertised and sold condoms under the NAKED mark in the United States through its websites since at least April 2003, *see Australian*, 2018 WL 6929683, at *5; *see, e.g.*, J.A. 106 (Australian's Managing Director and Co-Owner, testifying that in April 2003, Australian launched an online marketing campaign and began receiving online orders from the United States), 168–70 (Sales Records) (providing records of online purchases from the United States of Australian products), and that it has applied for registration of the NAKED mark in 2003, an application which it subsequently abandoned, J.A. 59–60. However, the record also shows that, in March 2007, Australian and Naked entered into an agreement under which Australian promised to discontinue use of the NAKED mark in the United States and consented to Naked's use and registration of the NAKED mark in the United States, in exchange for Naked's consent to Australian's use and registration of a NUDE mark. *See* J.A. 1541 (Australian's Managing Director and Co-Owner, testifying that "in essence, I did

agree" to "[Naked's] use and registration of the trademark Naked in the United States"), 1543 (Australian's Managing Director and Co-Owner, testifying that Naked's "forbearance" on use of the NUDE mark was "something of value" to Australian), 1556 (Australian's Managing Director and Co-Owner, testifying that "I understood that we had a gentleman's agreement to coexist in the marketplace").[2]

Therefore, even if Australian has shown that it has a "commercial interest" in Naked's mark, it has contracted away any "*legitimate* commercial interest" in that mark and, therefore, any "reasonable belief in damages" related to Naked's registration of that mark. *Empresa Cubana*, 753 F.3d at 1275 (emphasis added); *see Ace-Fed. Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000)

---

[2] Australian does not substantively challenge the Board's factual findings on this point. *See Australian*, 2018 WL 6929683, at *6–9 (making various factual findings "to determine whether the parties had reached an agreement regarding their respective use and registration of the NAKED trademark"). Rather, Australian asserts, in passing, that "it did not" "contract[] away its proprietary rights." Appellant's Br. 19; *see id.* at 8 (characterizing, in its statement of facts, the parties' communications as unsuccessful settlement negotiations). Even if this is construed as argument, Australian fails to develop the point. It is, therefore, waived. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (providing that arguments raised only in the "background of [an] opening brief" are waived); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (providing that "mere statements of disagreement with the [lower tribunal] as to the existence of factual disputes do not amount to a developed argument" and that "a passing reference to an issue . . . will not suffice to bring that issue before this court" (internal quotation marks and citations omitted)).

(explaining that a "valid and enforceable" contract has "both consideration to ensure mutuality of obligation, and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy" (internal quotation marks and citation omitted)). Indeed, Australian has specifically agreed not to challenge Naked's use and registration of the NAKED mark. J.A. 1541 (Australian's Managing Director and Co-Owner, conceding that he had agreed "to [Naked's] use and registration of the trademark [NAKED] in the United States"). As such, there is "no real controversy between the parties"—they resolved any such controversy between themselves in 2007—leaving Australian "no more than an intermeddler" here. *Coach Servs.*, 668 F.3d at 1376 (internal quotation marks and citation omitted); *see* J.A. 1748 (Australian's Managing Director and Co-Owner, telling Naked that there was "[n]o need to put anything on paper, [as it] just makes the lawyers a lot of money" and explaining that "[Australian] no longer ha[d] any Naked condoms in [the United States], so it should be clear sailing for [Naked]"); *see also* J.A. 1558 (Australian's Managing Director and Co-Owner, explaining that Naked "wrote us a very flippant letter" that he took to be a "breach" of their "gentlemen's agreement" such that Australian filed its cancellation petition in response). Accordingly, the Board did not err in concluding that Australian failed to prove it has standing under 15 U.S.C. § 1064 to petition for the cancellation of Naked's registration.

The Majority, however, reaches the opposite conclusion through a series of missteps. First, the Majority misreads the Board's determination as erroneously requiring that Australian "establish proprietary rights in its unregistered [NAKED] mark." Maj. Op. 6. The Majority states that "[t]he Board reasoned that, in order to show that it had standing, Australian was required to establish proprietary rights in its unregistered mark," noting that Board relied on *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317

(C.C.P.A. 1981).  Maj. Op. 4 (citing *Australian,* 2018 WL 6929683*,* at \*2, \*11).  However, the Board only required that Australian prove what it pled.  *Compare Australian*, 2018 WL 6929683, at \*2 (noting, before turning to its standing analysis, that Australian had brought a "likelihood of confusion case" and that, because it "filed its petition for cancellation on the basis of its unregistered NAKED and NAKED CONDOM trademarks," to make such a case it "must establish proprietary rights in those pleaded common-law marks" as reflected in the defenses raised by Naked (citing *Otto Roth*, 640 F.2d 1317)), *with id.* at \*11 ("[Australian] failed to prove that it has standing to cancel the registration because . . . [it had] contracted away its right to use and register NAKED and by extension NAKED CONDOMS.").  As the Board explained, "[Australian's] standing is intrinsically connected with the question of whether the parties have an enforceable agreement that precludes [Australian] from using or registering the mark . . . and from challenging [Naked's] use and registration of the . . . mark."  *Id.* at \*11.

Second, while the Majority alludes to the Board's conclusion that Australian and Naked had entered into a prior agreement, Maj. Op. 4 (noting that the Board "found that, although no formal written agreement existed, the parties entered into an informal agreement through email communications and the parties' actions"), 7 (providing that "[t]he Board determined that Australian had contracted away its right to use and register its unregistered mark"), it does not substantively address these findings in its analysis, Maj. Op. 7 (stating that "[w]hile an agreement could ultimately bar Australian from proving *actual* damage, § 1064 requires only a *belief* of damage").  Instead, the Majority relies on *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316 (Fed. Cir. 1983).  Maj. Op. 7.  This reliance is misplaced.  The Majority relies on *Selva* for the proposition "that contracting away one's rights to use a trademark does not preclude challenging a mark before the Board."  Maj.

Op. 7 (citing *Selva*, 705 F.2d at 1325).  This is incorrect.  In *Selva*, we held that the Board erred by "[r]efus[ing] to pass" on the issue of contractual estoppel.  *Selva*, 705 F.2d at 1323.  We separately held that, while the Board had not directly addressed the issue, it had nonetheless erred by requiring "proof of damage" for standing, *id.* at 1325, when it concluded that the petitioner could not be injured because it "already ha[d] an existing," substantially similar "registration" to that it sought to cancel, *id.* at 1321.  We explained that proof of "real interest," not proof of damage, was required to establish standing to petition for cancellation.  *Id.* at 1325–26 (citing *Lipton*, 670 F.2d at 1028); *see Lipton*, 670 F.2d at 1027 ("[A] party who demonstrates a real interest in the proceeding has standing to litigate even though ultimately its allegation that he is or will be damaged is refuted.").[3]  We did not reach whether a prior

---

[3]    *Selva* also asserts that "proof of . . . belief of damages" is not required.  *Selva*, 705 F.2d at 1325.  This is a misstatement, given 19 U.S.C. § 1064's express language.  *See* 19 U.S.C. § 1064 ("A petition to cancel a registration of a mark . . . may . . . be filed . . . *by any person who believes that he is or will be damaged* . . . by the registration of a mark[.]" (emphasis added)).  As we have subsequently clarified, *Selva* did not create a different or more lenient test for standing, but rather stands for the proposition that proof of "[a]ctual damage" is "not requisite," rather an "opposer or cancellation petitioner" must "plead and prove facts showing a real interest in the proceeding."  *Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1265 (Fed. Cir. 1983) (citing *Selva*, 705 F.2d 1316, 1325 n.6, 1324–26); *see Job's Daughters*, 727 F.2d at 1092 ("In recent cases, this court has explicitly said that there is no requirement that damage be proved in order to establish standing or to prevail in a cancellation proceeding.").  Rather, "[t]he crux of the matter" remains "whether [the petitioner's]

agreement could preclude standing. *See Selva*, 705 F.2d at 1324 (remanding to the Board to consider "the agreement, its construction, [and] its validity if necessary to decide the issues properly before it in this cancellation proceeding, including the issue of estoppel").

Third, the Majority erroneously finds proof of Australian's reasonable belief in damages elsewhere in the record. The Majority states that Australian "demonstrates a belief of damage because the USPTO refused registration of both the [U.S. Application Serial Nos. 78,758,]237 and [85,772,]589 [(the "237 application' and "589 application,' respectively)] . . . based on a likelihood of confusion with Naked's registered mark[.]" Maj. Op. 8–9. In 2011, following rejection by the USPTO, Australian abandoned the '237 application, declining to pursue it further based on its discussions with Naked. J.A. 1565 (Australian's Managing Director and Co-Owner, stating that Australian abandoned the '237 application based on its "negotiations" with Naked). Further, Australian did not file its '589 application until after it had filed its petition against Naked's mark, J.A. 44 (Petition to Cancel, dated October 29, 2012), 1091 (Application, dated November 6, 2012), and did not raise this application as a basis for standing in either its initial petition, J.A. 37–44 (Petition to Cancel), or its subsequent amended petition, J.A. 52–63 (Amended Petition to Cancel, dated September 9, 2014); *see generally Australian*, 2018 WL 6929683, at *1–11 (making no mention of the '589 application). Standing "must exist at the commencement of the litigation," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted); *see Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1073 (Fed. Cir. 2020) (similarly requiring statutory standing at the time of filing), and "[a]bsent exceptional circumstances,

---

belief [in damage] is reasonable and reflects a real interest in the issue." *Ritchie*, 170 F.3d at 1097.

a party cannot raise on appeal legal issues not raised and considered [before the Board].” *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174 (Fed. Cir. 2019) (citation omitted).

## CONCLUSION

Because the Board correctly concluded that Australian had failed to prove it had a legitimate commercial interest on which to base its petition for cancellation of Naked's registration, I respectfully dissent.