This Opinion Is a
Precedent of the TTAB

Mailed: October 22, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*The Mars Generation, Inc.*
*v.*
*Albert G. Carson IV*

————

Opposition No. 91224726

————

Marsha G. Gentner of Dykema Gossett PLLC,
    for The Mars Generation, Inc.

Francis John Ciaramella of Rick Ruz PLLC,
    for Albert G. Carson IV

————

Before Bergsman, Goodman, and Lynch, Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

This case involves aspiring astronauts vying to be the first humans to Mars, who have clashed over the term "Mars Generation." Albert G. Carson IV ("Applicant") seeks registration on the Principal Register of the marks I AM THE MARS

GENERATION[1] and WE ARE THE MARS GENERATION,[2] both in standard characters, for "licensing of advertising slogans and cartoon characters" in International Class 41. His daughter, Alyssa Carson, is an aspiring astronaut who promotes her desire to be the first human to visit Mars.[3]

The Mars Generation, Inc. ("Opposer") is an organization founded by aspiring astronaut Abigail Harrison, who describes her dream since childhood of becoming "the first person to set foot on Mars."[4] Opposer, by its Notice of Opposition, opposes registration on several grounds: (1) that the applications are void ab initio because the marks were not in use in commerce as of the filing dates of the applications; (2) likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d); (3) that the marks fail to function as service marks under Section 1, 2, 3 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, 1053 and 1127; and (4) mere descriptiveness under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).[5]

---

[1] Application Serial No. 86494807 was filed on January 4, 2015. Although initially no filing basis was specified, Applicant amended the application to proceed under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging use of the mark at least as early as November 11, 2013, and use of the mark in commerce at least as early as January 15, 2015. TSDR May 13, 2015 Response to Office Action at 1.

The initialism "TSDR" refers to the USPTO's Trademark Status and Document Retrieval system. Citations to the examination record are by page number in the Office Action included in the citation.

[2] Application Serial No. 86516111 was filed on January 27, 2015 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging use of the mark at least as early as November 11, 2013, and use of the mark in commerce at least as early as January 15, 2015.

[3] 55 TTABVUE 3; 65 TTABVUE 32, 40, 79. TTABVUE refers to the Board's online docketing system. The number preceding "TTABVUE" is the docket entry number while the later number refers to the page number of that docket entry.

[4] 53 TTABVUE 2.

[5] 1 TTABVUE.

Opposer relies on two registrations for MARS GENERATION in standard characters, with "MARS" disclaimed, one for:

> Outreach program, training program, and information distribution services directed primarily toward educating teenagers and young adults who are interested in encouraging and stimulating public interest in space, space flight, space exploration, and space programs, namely, classes, seminars, non-downloadable publications and online resources, namely, articles, blogs, and online journals, all directed to enabling teenagers and young adults to obtain relevant training, support, guidance, and information, all of the foregoing excluding the areas of online competitions and video games in International Class 41;[6]

and the second for:

> Clothing, namely, t-shirts, shirts, tops, sweatshirts, sweaters, hooded sweatshirts, coats, jackets, bottoms, pants, trousers, jeans, shorts, sweatpants, pajamas, hats, and caps featuring images and/or other information related to encouraging and stimulating public interest in space, space flight, space exploration, and space programs in International Class 25; and
>
> Novelty items, namely, ornamental cloth patches featuring images and/or other information related to encouraging and stimulating public interest in space, space flight, space exploration, and space programs in International Class 26.[7]

In his Answer, Applicant denied Opposer's salient allegations.[8] Applicant also raised four purported affirmative defenses, but they are amplifications of his denials and not true affirmative defenses, so we do not address them as such. *See, e.g., DeVivo*

---

[6] Registration No. 5381049 issued January 16, 2018. 51 TTABVUE 5.

[7] Registration No. 5396876 issued February 6, 2018. 51 TTABVUE 7.

[8] 4 TTABVUE.

*v. Ortiz,* 2020 USPQ2d 10153, at *1 (TTAB 2020) (mere amplifications of the applicant's denials not considered as separate affirmative defenses); *John W. Carson Found. v. Toilets.com, Inc.,* 94 USPQ2d 1942, 1949 (TTAB 2010) ("The asserted defense of failure to state a claim is not a true affirmative defense because it relates to an assertion of the insufficiency of the pleading of opposer's claim rather than a statement of a defense to a properly pleaded claim.").

The opposition is fully briefed. For the reasons set forth below, we sustain the opposition on the ground that the applications are void ab initio because the marks were not in use in commerce as of the filing dates of the applications.

## I. Evidentiary Record and Related Matters

The record includes the pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files of the opposed applications.

Opposer also introduced:

- A testimony declaration and a rebuttal testimony declaration from Nicole Harrison, the Vice President of its Board of Directors "and the mother of its founder leader and president, Abigail Harrison aka 'Astronaut Abby.'"[9]

- A testimony declaration from Abigail Harrison, the President of its Board of Directors, and its "Founder and Leader."[10]

- A rebuttal testimony declaration from Marsha Gentner, Opposer's counsel.[11]

---

[9] 55 TTABVUE; 73 & 74 TTABVUE.

[10] 53 & 54 TTABVUE.

[11] 72 TTABVUE.

- A notice of reliance on Opposer's above-referenced registrations.[12]

- Two notices of reliance on certain of Applicant's responses to discovery.[13]

Applicant submitted:

- A testimony declaration from Applicant Albert G. Carson IV.[14]

- A notice of reliance on the opposed applications, as well as on Application Serial No. 86814312 for the mark MARS GENERATION, certain of Applicant's discovery requests and Opposer's responses to such discovery requests, and certain of Opposer's discovery requests.[15]

- A notice of reliance on certain of Applicant's responses to discovery.[16]

Opposer lodged some evidentiary objections that mostly relate to Applicant's testimony and other evidence attempting to establish priority of use.[17] However, given the limited scope of our decision that the opposed applications are void *ab initio* based on nonuse at the time of filing, we need not reach the priority issue and such evidentiary objections are moot. We therefore do not address them.

As to Opposer's objection to portions of Mr. Carson's declaration as testifying to matters about which he previously claimed to lack knowledge in response to requests

---

[12] 51 TTABVUE.

[13] 52 TTABVUE; 71 TTABVUE.

[14] 65 TTABVUE.

[15] 64 TTABVUE. The Board previously struck Exhibits I, K, M, O, Q, R and S from Applicant's Notice of Reliance at 64 TTABVUE, but allowed Applicant to cure the defects. 76 TTABVUE. Applicant submitted a curative notice of reliance at 78 TTABVUE.

[16] 78 TTABVUE. As to Applicant's responses to Requests for Admission Nos. 7, 8, 74 and 97, the Board denied Opposer's Motion to Strike these "**to the extent** the responses constitute admissions." 85 TTABVUE 7 (emphasis in original).

[17] 86 TTABVUE 14-15 (Opposer's Brief); 88 TTABVUE 5-8 (Opposer's Reply Brief).

for admission,[18] we decline to strike the testimony outright. However, as discussed below, we consider the objection in weighing the probative value of the testimony.

## II. Entitlement to a Statutory Cause of Action[19]

Entitlement to a statutory cause of action must be established in every inter partes case. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 at *3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26, 109 USPQ2d 2061, 2067 n.4 (2014)), *cert. denied,* ___ U.S. ___ (2021). A party in the position of plaintiff may oppose registration of a mark when such opposition is within the zone of interests protected by the statute, 15 U.S.C. § 1063, and the plaintiff has a reasonable belief in damage proximately caused by the prospective registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at * 6-7 (Fed. Cir. 2020), *cert. denied,* ___ U.S. ___ (2021). Demonstrating a real interest in opposing the registration of a mark satisfies the zone-of-interests requirement, and "[i]n most settings, a direct commercial interest satisfies the 'real interest' test." *Herbko Int'l v. Kappa Books*, 308 F.3d 1156, 64 USPQ2d 1375, 1377 (Fed. Cir. 2002).

---

[18] In response to Opposer's Requests for Admission Nos. 110 and 111 regarding whether Applicant had granted a license of an advertising slogan or cartoon character under his proposed marks, Applicant responded that he was "without sufficient knowledge or information to admit or deny" the requests. 52 TTABVUE 42, 47.

[19] Board decisions have previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Sections 13 and 14 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Resources, Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020).

Opposer's direct commercial interest and reasonable belief in damage proximately caused by the registration of the marks in Applicant's pending applications are established by Opposer's use of MARS GENERATION as a trade name and for a variety of goods and services,[20] as well as its registrations for MARS GENERATION.[21] *See Lipton Indus. Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) (reasonable belief in damage may be established by "assert[ing] a likelihood of confusion which is not wholly without merit …"); *Australian Therapeutic Supplies*, 2020 USPQ2d 10837, at *4 (An opposer may "demonstrate a real interest and reasonable belief of damage by producing and selling merchandise bearing the [proposed] mark.") (citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) and *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017, 1020 (Fed. Cir. 1984)).

Accordingly, Opposer has proven its statutory entitlement to oppose, which extends to all its grounds for opposition. *See Enbridge, Inc. v. Excelerate Energy LP,* 92 USPQ2d 1537, 1543 n.10 (TTAB 2009) (citing *Liberty Trouser Co., Inc. v. Liberty & Co.*, 222 USPQ 357, 358 (TTAB 1983)).

---

[20] *E.g.,* 53 TTABVUE 9-10, 178-83, 193-96 (A. Harrison Declaration & exhibits); 54 TTABVUE 3-29 (A. Harrison Declaration exhibits); 55 TTABVUE 3, 6 (N. Harrison Declaration & exhibits).

[21] 51 TTABVUE 5-7.

## III.   Nonuse in Commerce

We first address Opposer's claim that neither of Applicant's marks was in use in commerce in connection with the recited service when the applications were filed, rendering the applications void.

### A. Legal Background

Under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), a mark may not be registered unless it is "used in commerce," and "an applicant may not claim a Section 1(a) filing basis unless the mark was in use in commerce on or in connection with all the goods or services covered by the Section 1(a) basis as of the application filing date." *Hachette Filipacchi Presse v. Elle Belle LLC*, 85 USPQ2d 1090, 1093 (TTAB 2007) (citing Trademark Rule 2.34(a)(1)(i), 37 C.F.R. § 2.34(a)(1)(i)); *see also Grand Canyon W. Ranch, LLC v. Hualapai Tribe*, 78 USPQ2d 1696, 1698 (TTAB 2006) ("It is clear that an applicant cannot obtain a registration under Section 1 of the Trademark Act for goods or services upon which it has not used the mark. 15 U.S.C. § 1051.").

The Trademark Act provides that "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127; *see also Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986, 120 USPQ2d 1640, 1642 (Fed. Cir. 2016) (providing an overview of the statutory use in commerce requirement); *Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1773-75 (TTAB 1994) (reviewing the legislative history),

*aff'd,* 108 F.3d 1392 (Fed. Cir. 1997) (unpublished). Trademark Act Section 45 states

in relevant part that a mark is considered in use in commerce for services

> when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

Where an application filed based on Section 1(a) is opposed on the ground that there was no use in commerce on any of the goods or services specified when the application was filed, the remedy when such a claim succeeds is to hold the application void. *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009) ("The registration of a mark that does not meet the use requirement is void ab initio."); *see also Grand Canyon v. Hualapai Tribe*, 78 USPQ2d at 1697 ("[H]olding an application to be void is an appropriate remedy when the pleaded ground … is … that the applicant has not used the applied-for mark on any of the goods or services identified in the application prior to the filing of the application"). Accordingly, when a mark has not been "used in commerce" by the day the use-based application is filed, the application is void ab initio. *Couture v. Playdom*, 778 F.3d 1379, 113 USPQ2d 2042, 2043-44 (Fed. Cir. 2015). *But see Grand Canyon v. Hualapai*, 78 USPQ2d at 1697 ([A]s long as the mark was used on some of the identified goods or services as of the filing of the application, the application is not void in its entirety.").

In this case, Applicant's applications recite a single service – licensing of advertising slogans and cartoon characters. We therefore focus only on this service, and not on Applicant's evidence of common law use in connection with other services such as education or entertainment. The Board's jurisdiction is limited to determining the right to register, not use of, a mark.

### B. Irregularity in Application Serial No. 86494807

As a preliminary matter, an irregularity exists in Application Serial No. 86494807, which Opposer has highlighted. As noted above, Applicant filed the application on January 4, 2015, but omitted a filing basis.[22] While a filing basis is an application requirement under Trademark Rule 2.32(a)(5), 37 C.F.R. § 2.32(a)(5), "omission of a specified filing basis will not prevent receipt of a filing date." TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 806 (July 2021) (citing *Kraft Grp. LLC v. Harpole*, 90 USPQ2d 1837, 1840 (TTAB 2009)). As prescribed by TMEP § 806, the Examining Attorney in this case issued an Office action that required Applicant to provide his filing basis and comply with the accompanying requirements of the filing basis selected.[23] Applicant responded by specifying Section 1(a), 15 U.S.C. § 1051(a) as the filing basis, claiming a date of first use in commerce of "[a]t least as early as 1/15/2015," and providing a specimen "in use in commerce at least as early as the filing date of the application [for an application based on Section

---

[22] TSDR January 4, 2015 Application at 1 ("No Filing Basis Specified").

[23] TSDR April 10, 2015 Office Action at 1.

1(a)….].”[24] Significantly, the January 15, 2015 date of first use in commerce is later than the January 4, 2015 application filing date, which is impermissible. *See* Trademark Rule 2.34(a)(1)(i), 37 C.F.R. § 2.34(a)(1)(i) (for a § 1(a) application, requiring a verified statement that the mark is in use in commerce as of the application filing date). Per TMEP § 903.04 (emphasis original), "because a § 1(a)-based application must properly allege *current* use of the mark, an applicant must attest to dates of use that are on or before the date such application was signed."

Based on our determination below that Applicant has not used either of the proposed marks in commerce for the recited service in the applications regardless of the operative date, we need not resolve the irregularity in Application Serial No. 86494807. *See In re W.W. Henry Co.,* 82 USPQ2d 1213, 1213-14 (TTAB 2007) (when encountering this type of oddity in the context of an ex parte appeal, the Board noted that "if applicant ultimately prevails herein, the application will be remanded to the examining attorney to allow applicant time to file either an amendment to the application to allege a date of first use anywhere and a date of first use in commerce no later than the filing date of the application or an amendment to assert Section 1(b) of the Trademark Act as the basis for the application.").

### C. Arguments, Evidence and Analysis

"On its face, the statute is clear that a mark for services is used in commerce only when *both* [1] 'it is used or displayed in the sale or advertising of services *and* [2] the

---

[24] TSDR May 13, 2015 Response to Office Action at 1.

services are rendered....' 15 U.S.C. § 1127." *Couture,* 113 USPQ2d at 2043 (emphasis original). To establish nonuse, Opposer points to Applicant's discovery responses, including the following:

- In answer to Opposer's interrogatory seeking the identity of "each person or party whom Applicant has licensed to use any advertising slogan and/or cartoon character," as well as other details about such licensing,[25] Applicant did not identify any persons, and instead stated that he had no "documents for licensing agreements, revenue generated, and transfers in rights to Applicant's mark," and pointed to another interrogatory answer "that he has done roughly $7,500 in sales, which consists primarily of online sales and speaking engagements."[26]

- In response to Opposer's document requests relating to use of the marks, including revenue from services under Applicant's marks and samples of licensed uses under the marks,[27] Applicant did not produce responsive documents, and later admitted, in response to Opposer's follow-up requests for admission, that he did not have any responsive documents.[28]

- In response to Opposer's requests for admission, Applicant admitted "that it [sic] has not provided the name of any person who has licensed an advertising slogan from Applicant," and "that it [sic] has not provided the name of any person who has licensed a cartoon character from Applicant."[29]

- In response to Opposer's requests for admission that "[a]s of January 15, 2015, Applicant had not granted a license to any person or party" of an advertising slogan, and of a cartoon character, Applicant responded that he "lacked

---

[25] 52 TTABVUE 16 (Interrogatory No. 23).

[26] 52 TTABVUE 18 (Answer to Interrogatory No. 23).

[27] 52 TTABVUE 23-32 (Requests for Production of Documents Nos. 21-23, 27-28).

[28] 52 TTABVUE 45-48 (Responses to Requests for Admission Nos. 96, 97, 101, 102, 104-106).

[29] 54 TTABVUE 47 (Responses to Requests for Admission Nos. 108 & 109).

sufficient knowledge or information to admit or deny" the requests.[30] Despite a Board order expressing incredulity that Applicant would lack such knowledge, especially given the use allegations matching that date in the applications and expressing the Board's expectation (but not order) that Applicant amend the responses to these requests for admission,[31] Applicant did not do so.

- In response to relevant requests, the only document produced by Applicant that includes the proposed mark I AM THE MARS GENERATION and refers in any way to the recited service is nearly identical to the specimen of use from the application, shown below.[32]



In response to an interrogatory as to the printer of the above and "each medium in which it appeared, was published and/or distributed," Applicant responded that he "does not know the printer of the above-referenced advertisement[].

---

[30] 52 TTABVUE 42, 47 (Responses to Requests for Admission Nos. 110 & 111).

[31] 32 TTABVUE 14.

[32] 78 TTABVUE 153. As the Gentner declaration points out, the specimen of use from the application contains "crosshairs" at the corners. 72 TTABVUE 3, 8-9.

The above-referenced advertisement[] [was] distributed in person at speaking engagements."[33]

- In response to relevant requests, the only document produced by Applicant that includes the proposed mark WE ARE THE MARS GENERATION and refers in any way to the recited service is nearly identical to the substitute specimen of use from the application, shown below.[34]



In response to an interrogatory as to the printer of the above and "each medium in which it appeared, was published and/or distributed," Applicant responded that he "does not know the printer of the above-referenced advertisement[]. The above-referenced advertisement[] [was] distributed in person at speaking engagements."[35]

---

[33] 71 TTABVUE 6.

[34] 78 TTABVUE 154. As the Gentner declaration points out, the substitute specimen of use from the application contains "crosshairs" at the corners. 72 TTABVUE 3, 5-6.

[35] 71 TTABVUE 6.

Opposer asserts that these discovery responses show that Applicant has not actually rendered the recited service, and certainly had not done so as of the application filing dates.

Turning to Applicant's evidence of purported use, Applicant submitted a testimony declaration that contains conclusory statements that "[e]ach year from 2015 through the present," he has provided "licensing of advertising slogans and cartoon characters" under both proposed marks "to a wide range of customers located throughout the United States."[36] However, as noted above, no such customers were identified in discovery, nor were any identified in the testimony. After referring not only to the recited service from the applications at issue, but also to use of the same marks in connection with educational and entertainment services related to space, Mr. Carson goes on to state that since 2014, he has operated a website at www.nasablueberry.com, an Instagram account @nasablueberry, a Twitter account @nasablueberry, and a Facebook account @nasablueberry "through which I promote and provide my services under the I AM THE MARS GENERATION, WE ARE THE MARS GENERATION and THE MARS GENERATION trademarks."[37]

Given the prior references to services other than those in the applications, Mr. Carson's lack of specificity as to the nature of the services to which he refers as "my services," renders this testimony ambiguous. However, the declaration includes Exhibit A, which Mr. Carson characterizes as "marketing and advertising materials

---

[36] 65 TTABVUE 5.

[37] 65 TTABVUE 5-6.

evidencing my advertising and use" of the marks "and that the relevant services were available under the respective marks as of the date specified."[38] These include screenshots from the website and social media accounts mentioned above.

However, Exhibit A lays bare a lack of use of either mark in connection with "licensing of advertising slogans and cartoon characters." Applicant's website describes itself as "NASA Blueberry The Official Website of Alyssa Carson," and contains no reference to the licensing service. The few uses of the terms in the mark appear to be in connection with entirely different goods or services, such as the following WE ARE THE MARS GENERATION wristband:

---

[38] 65 TTABVUE 6.



Carson IV, Albert 000014

[39]

An unidentified page titled "My Dream" does not bear a date or URL and contains an autobiographical paragraph by Alyssa Carson, followed by "I AM THE MARS GENERATION."[40] Similar wording appears on Wayback Machine screen captures from the nasablueberry.com website, introduced through Mr. Carson's declaration.[41] But whether in the unidentified document or on the screenshots, the accompanying text does not include any reference to licensing, advertising, slogans, or cartoon characters. The social media pages which Applicant claims evidence promotion and

---

[39] 65 TTABVUE 24.

[40] 65 TTABVUE 42.

[41] *E.g.,* 65 TTABVUE 77, 87.

provision of the licensing service instead focus on the space-related activities and interests of Alyssa Carson, and while some include the wording I AM THE MARS GENERATION or WE ARE THE MARS GENERATION, none involve, refer to, or relate to licensing of advertising slogans and cartoon characters in any way.[42]

Opposer introduced rebuttal testimony from Nicole Harrison indicating that she reviewed the website and social media accounts through which Applicant claims to have promoted and provided his services, and found no "reference to, and/or advertisement or offer of licensing of advertising slogans or cartoon characters, or even licensing services, per se."[43] Opposer summarizes its evidentiary case for nonuse by citing to Applicant's discovery responses and emphasizing that Applicant cannot name or document any licensee of a slogan or cartoon character, cannot name or document a slogan or cartoon character he has licensed, cannot provide or document any licensing revenue, and cannot name or document any licenses of advertising or cartoon characters.[44]

The Carson declaration also points to Exhibit B, which he identifies as Wayback Machine screenshots "representative of and evidence of use of" the marks at issue "as of the identified dates."[45] Again, however, the documents in Exhibit B do not involve licensing, advertising, slogans, or cartoon characters in any way. Instead, they promote the space-related activities and interests of Alyssa Carson.

---

[42] 65 TTABVUE 42-63.

[43] 74 TTABVUE 2-3.

[44] 86 TTABVUE 26-27 (Opposer's Brief).

[45] 65 TTABVUE 8.

Ultimately, Applicant's discovery responses in the record establish a prima facie case of nonuse as of the filing dates of the applications, and Applicant's evidence does not overcome it. *Cf. ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036, 1040-41 (TTAB 2012) (prima facie showing of abandonment based on nonuse made based on admissions by defendant and "other interrogatory responses coupled with [defendant's] acknowledgment of the lack of documents such as sales records, bank records, tax returns, sales receipts, invoices, bills of service, advertising and promotional materials"). We find unpersuasive Mr. Carson's conclusory, bare-bones testimony that he has used the marks for the recited service since January 2015. He offers no probative documentary evidence that he ever engaged in licensing of advertising slogans and cartoon characters.

Testimony of a single witness may establish use, "but only if it is sufficiently probative," and the testimony should not be characterized by "indefiniteness but should carry with it conviction of its accuracy and applicability." *Exec. Coach Builders, Inc. v. SPV Coach Co.,* 123 USPQ2d 1175 1184 (TTAB 2017) (quoting *B.R. Baker Co. v. Lebow Bros.*, 150 F.2d 580, 66 USPQ 232, 236 (CCPA 1945) and citing *Nationstar Mortg. LLC v. Ahmad*, 112 USPQ2d 1361, 1372 (TTAB 2014)); *see also DeVivo v. Ortiz*, 2020 USPQ2d 10153 at *3 (TTAB 2020) (applying these principles regarding oral testimony to written testimony). "[T]estimony is strengthened by corroborative documentary evidence." *Exec. Coach Builders,* 123 USPQ2d at 1184 (citing *Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114, 92 USPQ 330, 333 (CCPA 1952)).

We find Mr. Carson's testimony indefinite and lacking in accuracy as to what certain documents show. The documents attached to Mr. Carson's declaration that he testified "are marketing and advertising"[46] materials and "representative of and evidence of use"[47] of the marks in connection with the recited service have nothing whatsoever to do with "licensing of advertising slogans and cartoon characters." Instead, they promote or report on the primarily space-related interests and activities of Applicant's daughter.[48] This disconnect between his characterization of what the declaration exhibits show and what the exhibits actually show further undermines Mr. Carson's already conclusory testimony that he has provided the licensing service recited in the applications. The probative value of Mr. Carson's testimony also is significantly undermined by his utter lack of detail – such as the failure to identify any subject matter (examples of slogans or characters) for licensing, any licensee customers, any information on revenue from licensing, or indeed any specifics other than the bald assertion that he used the marks for the service.

The only documents in the record that include the proposed marks and also refer in any way to the recited service are undated documents (the specimens of use) that Applicant has identified in the applications as "advertising." Even if the "specimens could be found to be technically acceptable" for advertising the service, this does not suffice to establish the mark was actually used in commerce for the service, where

---

[46] 65 TTABVUE 7.

[47] 65 TTABVUE 8.

[48] 65 TTABVUE 14-93.

"there is no corroborating evidence that applicant offered any of the services identified in the application[s] at the time he filed [them]." *See Nationstar Mortg.*, 112 USPQ2d at 1373-74.

"The statute requires not only the display of the mark in the sale or advertising of services but also the rendition of those services in order to constitute use of the service mark in commerce." *Intermed Commc'ns, Inc. v. Chaney*, 197 USPQ 501, 504 (TTAB 1977); *see also Couture*, 113 USPQ2d at 2043-44. Thus, even assuming Applicant's specimens constitute legitimate advertising of the recited service, "an applicant's preparations to use a mark in commerce are insufficient to constitute use in commerce. Rather, the mark must be actually used in conjunction with the services described in the application for the mark." *Aycock*, 90 USPQ2d at 1308; *see also Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.,* 859 F.3d 1023, 123 USPQ2d 1024, 1029 (Fed. Cir. 2017) ("[W]e have held that mere preparation and publication of future plans do not constitute use in commerce."). Here, we remain unconvinced that Applicant has rendered the recited service. "Without question, advertising or publicizing a service that the applicant intends to perform in the future will not support registration;" the advertising must instead "relate to an existing service which has already been offered to the public." *Aycock*, 90 USPQ2d at 1306 (internal quotations and citations omitted).

In addition to the same documents attached as exhibits to the Carson declaration, other documents to which Applicant points as evidence of use include news articles about Alyssa Carson and other space-related subjects and "photographs showing the

educational services rendered."[49] None of these refer to or involve Applicant rendering the recited licensing service. As Opposer's summary accurately characterizes the record, there is no documentary evidence that Applicant has actually rendered the service of licensing of advertising or cartoon characters at any point in time.

We find that Applicant did not offer the recited service under the marks in commerce as of the respective filing dates of the use-based applications. Failure to satisfy this "use in commerce" requirement renders the applications void ab initio. We therefore need not reach any of Opposer's other grounds for opposition. *See Multisorb Techs., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013).

**Decision:** The opposition is sustained as to both applications based on nonuse as of the application filing dates.

---

[49] 87 TTABVUE 27-29 (Applicant's Brief).