# United States Court of Appeals for the Federal Circuit

---

**CORCAMORE, LLC,**
*Appellant*

**v.**

**SFM, LLC,**
*Appellee*

---

2019-1526

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92060308.

---

Decided: October 27, 2020

---

CHARLES L. THOMASON, Thomason Law Office, Louisville, KY, argued for appellant.

JOHANNA WILBERT, Quarles & Brady LLP, Milwaukee, WI, argued for appellee. Also represented by NICOLE MURRAY, CHRISTIAN G. STAHL, Chicago, IL.

---

Before REYNA, CHEN, and HUGHES, *Circuit Judges*.

REYNA, *Circuit Judge.*

Corcamore LLC appeals an order of the United States Patent and Trademark Office, Trademark Trial and Appeal Board. The Board entered default judgment as a sanction against Corcamore, which resulted in the cancellation of Corcamore's trademark registration for SPROUT. On appeal, Corcamore contends that the Board erred in granting default judgment, in particular because SFM LLC lacked standing to petition for cancellation of the trademark registration. We conclude that appellee SFM was entitled to bring and maintain a petition under 15 U.S.C. § 1064, the statutory cause of action for cancellation of trademark registrations, and that the Board did not otherwise abuse its discretion in imposing default judgment as a sanction. We affirm.

## BACKGROUND

### A. The Parties and Trademarks

SFM LLC ("SFM") owns the federal registration for SPROUTS and other SPROUTS nominative trademarks for use in connection with retail grocery store services. J.A. 121 ¶ 5. The SPROUTS mark was first used in commerce at least as early as April 15, 2002. *Id.* The below

image illustrates the use of the SPROUTS mark in a Sprouts Farmers Market grocery store.



J.A. 822.

Corcamore LLC ("Corcamore") owns a federal trademark registration for SPROUT for use in connection with vending machine services. The registration claims a first use date of May 1, 2008. J.A. 121 ¶ 4. Corcamore's SPROUT mark is used by its affiliate, Sprout Retail, Inc., in combination with a cashless payment card, the "Sprout OneCard," and an associated SPROUT-branded loyalty program for consumers that buy food and beverages at certain vending machines. J.A. 1222–23 ¶¶ 3–5; J.A. 643–48. Corcamore's SPROUT mark is also used on a SPROUT-branded website where users of the Sprout OneCard can monitor their food purchases and loyalty points and view

promotions offered to holders of the Sprout OneCard (pictured below).  *See* J.A. 423–24; J.A. 643; J.A. 645; J.A. 648.



J.A. 424, 643.

### B. Procedural History

SFM filed a petition with the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB" or "Board") to cancel Corcamore's registration for SPROUT.  J.A. 98–104; J.A. 120–25 (First Amended Petition for Cancellation).  SFM claimed that its rights to the SPROUTS mark were superior to Corcamore's rights because the mark had been in use since "at least as early as 2002," and Corcamore "did not make use of the trademark SPROUT prior to May 1, 2008, the date of first use claimed in the registration."  J.A. 121–22 ¶¶ 3, 8.  SFM alleged that it would be damaged by the continued registration of the SPROUT mark because use of the mark was "likely to cause confusion or mistake, or to deceive the purchasing public" with respect to the source of the goods it sold under its SPROUTS mark.  J.A. 122–23 ¶¶ 9, 16.

Corcamore moved to dismiss SFM's petition for lack of standing under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* J.A. 136–40.  Corcamore argued that SFM lacked standing to bring a petition for cancellation of a registered trademark, citing the analytical framework established by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118

(2014), for determining whether the requirements for maintaining a statutory cause of action have been satisfied. *See* J.A. 136–40. The Board determined that *Lexmark* was not applicable in this case, and denied Corcamore's motion to dismiss for lack of standing and motion for reconsideration. J.A. 11–12, 30–32. The Board reasoned that *Lexmark* was limited to civil actions involving false designation of origin (referred to as false advertising) under 15 U.S.C. § 1125(a) and does not extend to cancellation of registered marks under 15 U.S.C. § 1064. J.A. 11–12. The Board instead relied on the analysis adopted by this court in *Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270 (Fed. Cir. 2014), and concluded that SFM had standing because it sufficiently alleged a real interest in the cancellation proceeding and a reasonable belief of damage, as required under 15 U.S.C. § 1064. J.A. 11. As a result, the Board found that SFM had standing to bring a petition to cancel Corcamore's trademark registration. J.A. 11.

After the Board denied its motion to dismiss, Corcamore sent a letter to SFM's counsel indicating that it would bring "procedural maneuvers" against SFM and delay discovery. J.A. 891, ¶ 2; J.A. 894. Corcamore then embarked on a path of conduct that resulted in two separate sanctions and entry of default judgment in favor of SFM. First, Corcamore filed four motions requesting affirmative relief, including a motion for reconsideration of the Board's denial of its motion to dismiss, a motion for Rule 11 sanctions, a motion for summary judgment on the ground of collateral estoppel or issue preclusion, and a motion to strike. *See* J.A. 93. The Board deferred action on the motion for reconsideration but denied the motions for summary judgment, Rule 11 sanctions, and to strike. J.A. 16–26. Second, the Board determined that Corcamore had filed an "inordinate number of motions (all of which were denied) at a very early stage in this proceeding." J.A. 23. Accordingly, the Board sanctioned Corcamore, prohibiting it from filing any

additional unconsented motions without first obtaining Board permission (the "First Sanction"). J.A. 23–25.

At the opening of discovery, the Board stayed the First Sanction and SFM filed a motion to compel responses to its written discovery requests. *See* J.A. 40, 94. The Board ordered the parties to suspend filing papers not related to SFM's motion to compel. *See* J.A. 82–83. Despite this instruction, Corcamore filed numerous motions unrelated to SFM's motion to compel, including its own motion to compel discovery, a motion for a protective order to halt SFM's Rule 30(b)(6) deposition of a Corcamore representative, a motion to reconsider the denial of its motion for a protective order, and a motion to consolidate the proceeding with another proceeding. *See* J.A. 94.

The Board denied Corcamore's motion for a protective order to halt the deposition, which was filed on the eve of the deposition, and ordered Corcamore's witness to appear the following day as noticed. The Board cautioned that should Corcamore fail to comply, "the Board may entertain an appropriate motion for relief." J.A. 87. Corcamore failed to appear and did not alert SFM or the Board that the witness would not appear at the deposition. *See* J.A. 901, ¶¶ 16–17, 20. When SFM attempted to reschedule the deposition, Corcamore served objections and again refused to appear.

On October 25, 2017, SFM filed a motion to compel supplemental responses to certain document requests and interrogatories. On February 27, 2018, the Board granted-in-part SFM's motion and ordered Corcamore to comply with several enumerated instructions. J.A. 69–70. The Board instructed Corcamore that an evasive or incomplete response would be equivalent to a failure to disclose and advised SFM that the Board would entertain a motion for appropriate sanctions if Corcamore failed to comply with the order. J.A. 70. In the same order, the Board imposed another sanction (the "Second Sanction"), prohibiting

Corcamore from "filing any additional unconsented or un-stipulated motions without first obtaining prior Board permission." *Id.* at 71. Corcamore did not comply with the written-discovery order by, among other reasons, failing to serve timely supplemental responses, maintaining frivolous objections, and filing nonresponsive answers. *See* J.A. 87–88.

Unperturbed by the Second Sanction, Corcamore filed an "objection" to the Board's February 27, 2018 order and made several requests to file a variety of different procedurally impermissible motions. The Board denied Corcamore's unapproved filings for failure to comply with the Second Sanction.

At the close of discovery, SFM moved for default judgment as a sanction for Corcamore's litigation misconduct. J.A. 95. The Board granted the order on two grounds. First, the Board pointed to its express authority to award judgment as a sanction under 37 C.F.R. § 2.120(h) and Fed. R. Civ. P. 37(b)(2). Relying on its express authority, the Board granted default judgment as a sanction against Corcamore for its violations of the deposition order and numerous provisions of the written discovery order. J.A. 84–85; J.A. 87–88. Second, pointing to its inherent authority to control its cases and docket, the Board entered judgment as a sanction against Corcamore for litigation misconduct, including its refusal to cooperate with SFM's counsel to resolve discovery issues, violation of Board orders not to file non-germane papers, and violation of Board orders to properly serve documents. J.A. 85–86; J.A. 89–91.

The Board concluded that a lesser sanction would be inappropriate because Corcamore had on numerous occasions already violated the First and Second Sanctions. J.A. 89–90. The Board recognized that Corcamore engaged in willful, bad-faith tactics, consistent with its "procedural maneuvers" letter, frustrated SFM's ability to advance its case, and taxed Board resources. J.A. 91. Consequently,

the Board entered default judgment against Corcamore and ordered that Corcamore's registration "be cancelled in due course." *Id.* Corcamore timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295 (a)(4)(B).

## DISCUSSION

Corcamore makes two arguments on appeal. First, Corcamore contends that SFM lacks standing to bring a petition for cancellation of a registered trademark. Corcamore contends that the Board erred as a matter of law when it applied this court's analysis in *Empresa Cubana* instead of the analytical framework established by the Supreme Court in *Lexmark*. Second, Corcamore argues that the Board abused its discretion in granting default judgment as a sanction. We first address the standing issue.

Whether a party is entitled to bring or maintain a statutory cause of action is a legal question that we review de novo. *Empresa Cubana*, 753 F.3d at 1274 (citing *Lexmark*, 572 U.S. at 129). In this appeal, we review de novo whether SFM pleaded sufficient facts to establish entitlement to challenge Corcamore's registered trademark under § 1064.

We first observe that there exists confusion in the law stirred by the inconsistent use of the term "standing." As Justice Scalia observed, certain issues often discussed in terms of "standing" are more appropriately viewed as requirements for establishing a statutory cause of action. *Lexmark*, 572 U.S. at 128 n.4. That is the case here. To be clear, this appeal does not involve the traditional legal notions of Article III standing. This appeal focuses instead on the requirements that a party must satisfy to bring or maintain a statutory cause of action, such as a petition to cancel a registered trademark under 15 U.S.C. § 1064.

### A. *Lexmark*

Corcamore contends that we should reverse the Board's ruling because it applied the standard articulated by this court in *Empresa Cubana* instead of the analytical

framework established in *Lexmark*. We hold that the *Lexmark* analytical framework is the applicable standard for determining whether a person is eligible under § 1064 to bring a petition for the cancellation of a trademark registration. However, because we discern no meaningful, substantive difference between the analytical frameworks expressed in *Lexmark* and *Empresa Cubana*, we do not agree that the Board reached the wrong result in this case.

In *Lexmark*, the Supreme Court established two requirements for determining whether a party is entitled to bring or maintain a statutory cause of action: a party must demonstrate (i) an interest falling within the zone of interests protected by the statute and (ii) proximate causation. 572 U.S. at 129–34. The Court explained that those two requirements "suppl[y] the relevant limits on who may sue" under a statutory cause of action. *Id*. at 134. The Court made clear that the zone-of-interests requirement applies to all statutory causes of action, and that proximate causation generally applies to all statutory causes of action. *Id*. at 129, 133.

In *Lexmark*, the Court addressed the cause of action for false advertising provided in 15 U.S.C. § 1125(a). *Id*. at 129–37. The Court held that in order for a person to "come within a zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 131–32. The Court explained that the zone-of-interests test is "not especially demanding," and that "the benefit of any doubt goes to the plaintiff." *Id*. at 130 (citation and internal quotation marks omitted). The Court further explained that the purpose of the zone-of-interests test is to "foreclose[] suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id*. (citation and internal quotation marks omitted).

As to the second requirement, proximate causation, the Court noted that it is "generally presume[d]" that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132. The Court explained that "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133 (citation omitted). Regarding false advertising, the Court held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the [alleged false advertising]." *Id.* The Court explained, however, that the proximate-causation requirement "is not easy to define," has "taken various forms," and "is controlled by the nature of the statutory cause of action." *Id.* The relevant question, the Court explained, is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.*

*Empresa Cubana* was this court's first post-*Lexmark* appeal to address the requirements to bring a cancellation proceeding under § 1064. 753 F.3d at 1274–76.[1] We recognized *Lexmark*'s impact on the false advertising cause of action under § 1125(a), but we addressed *Lexmark* only in passing and, in particular, did not address whether the *Lexmark* framework applies to § 1064. Instead, we relied on our precedents in *Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999) and *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (CCPA 1982), and concluded that petitioner had a cause of action under § 1064 because it

---

[1]    In *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, we addressed § 1064 eligibility criteria and affirmed the Board's reliance on the *Empresa Cubana* "real interest in the proceeding" and "reasonable belief in damage" approach. 965 F.3d 1370, 1376 (2020). In *Australian Therapeutic Supplies*, however, neither the parties nor the Board addressed the applicability of *Lexmark*.

demonstrated "a real interest in cancelling the [registered trademarks at issue] and a reasonable belief that the [registered trademarks] are causing it damage." *Id.* at 1274.

Here, the Board determined that the *Lexmark* framework does not apply to § 1064 because *Lexmark* addresses § 1125(a), a different statutory provision. *See* J.A. 11–12 (explaining that "*Lexmark* involved a case of false advertising in a civil action arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); that is not the statutory provision(s) at issue in this Board cancellation"). The Board's interpretation of *Lexmark* is unduly narrow.

To be clear, § 1064, like § 1125(a), is a statutory cause of action provided in the Lanham Act. *See Empresa Cubana*, 753 F.3d at 1275–76 (holding that appellant demonstrated entitlement to a "statutory cause of action" under the Lanham Act). A "cause of action" consists of two elements: operative facts and the right or power to seek and obtain redress for infringement of a legal right which those facts show. *See* 1A C.J.S. *Actions* § 53; *see also Cause of Action*, Black's Law Dictionary (11th ed. 2019) ("A group of operative facts giving rise to one or more bases for suing.").

Congress created in § 1064 a group of operative facts that grant to "any person" the right to petition for cancellation of a registered mark if that person "believes that he is or will be damaged . . . by the registration of a mark on the principal register." 15 U.S.C. § 1064. Whether a specific person alleging a specific injury meets these operative facts requires us to interpret § 1064. *See Lexmark*, 572 U.S. at 128. To that end, we apply the "traditional principles of statutory interpretation" articulated in *Lexmark*: zone of interests and proximate causation. *Id.*

The *Lexmark* analytical framework applies to § 1064 and § 1125(a) because both are statutory causes of action. As Justice Scalia exhorted, the zone-of-interests requirement "applies to all statutorily created causes of action" and it "applies unless it is expressly negated." *Lexmark*,

572 U.S. at 129.  The proximate-causation requirement generally applies to all statutory causes of action, even where a statute does not expressly recite a proximate-causation requirement.  *See id.* at 132 ("generally presum[ing]" that the proximate-causation requirement applies to all statutory causes of action); *see also id.* (identifying three exemplary federal causes of action where the Supreme Court "incorporate[d] a requirement of proximate causation").  In view of the Supreme Court's instructions, we see no principled reason why the analytical framework articulated by the Court in *Lexmark* should not apply to § 1064.

The Board's conclusion to the contrary fails to recognize that *Lexmark* binds all lower courts not only regarding § 1125(a) but also with respect to the analytical framework the Court used to reach its decision.  *See, e.g.*, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *County of Allegheny v. Am. Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring in the judgment in part and dissenting in part) ("As a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.").  Once the Supreme Court adopts "a rule, test, standard, or interpretation . . . that same rule, test, standard, or interpretation must be used by lower courts in later cases."  *United States v. Duvall*, 740 F.3d 604, 609 (D.C. Cir. 2013) (Kavanaugh, J., concurring in the denial of rehearing en banc).  *Lexmark* established the analytical framework to be used for determining eligibility requirements for all statutory causes of action, including under § 1064, absent contrary Congressional intent.  Like all lower tribunals, we are obligated to apply that framework where applicable.  We thus hold that the *Lexmark* zone-of-interests and proximate-causation requirements control the statutory cause of action analysis under § 1064.

## B. *Empresa Cubana*

The Board failed to apply the *Lexmark* analytical framework, but it reached the correct result. As noted above, we see no meaningful, substantive difference in the analysis used in *Lexmark* and *Empresa Cubana*.

The zone-of-interests requirement and the real-interest requirement share a similar purpose and application. The purpose of the zone-of-interests test is to "foreclose[] suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Lexmark*, 572 U.S. at 130 (citation and quotation marks omitted). Likewise, a purpose of the real-interest test is to "distinguish [parties demonstrating a real interest] from mere intermeddlers or . . . meddlesome parties acting as self-appointed guardians of the purity of the Register." *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1325–26 (Fed. Cir. 1983) (citation and internal quotation marks omitted). Also like the zone-of-interests test, a petitioner can satisfy the real-interest test by demonstrating a commercial interest. *Compare Lexmark*, 572 U.S. 131–32 ("[T]o come within a zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a *commercial interest* in reputation or sales." (emphasis added)), *with Empresa Cubana*, 753 F.3d at 1275 ("[T]he desire for a registration with its attendant statutory advantages is a *legitimate commercial interest*, so to satisfy the requirements for bringing a cancellation proceeding." (emphasis added)). Given those similarities in purpose and application, a party that demonstrates a real interest in cancelling a trademark under § 1064 has demonstrated an interest falling within the zone of interests protected by § 1064.

Similarly, a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of § 1064.

Congress incorporated a causation requirement in § 1064, which provides a right to bring a cause of action "by any person who believes that he is or will be damaged . . . *by the registration of a mark on the principal register*." § 1064 (emphasis added). While our precedent does not describe the causation requirement as one of "proximate causation," it nonetheless requires petitioner's belief of damage to have "a sufficiently close connection," *Lexmark*, 572 U.S. at 133, to the registered trademark at issue. For example, in *Ritchie v. Simpson*, 170 F.3d 1092, 1098 (Fed. Cir. 1999), we explained that possession of "a trait or characteristic that is clearly and directly implicated in the proposed mark" demonstrates a reasonable belief of damage. In *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987), we explained that a petitioner can demonstrate "standing" by asserting "some direct injury to its own established trade identity if an applicant's mark is registered."[2] The direct connection between the belief of damage and the registered mark suffices to demonstrate proximate causation. *Cf. Lexmark*, 572 U.S. at 133 (holding that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury *flowing directly from* the deception wrought by the defendant's advertising." (emphasis added)). This direct connection also satisfies the purpose of the proximate-causation requirement—barring suits for alleged harm that is "too remote" from the unlawful conduct. *Id.* at 133. Given these similarities, a party that can demonstrate a reasonable

---

[2]     While both *Ritchie* and *Jewelers* discussed opposition proceedings under 15 U.S.C. § 1063, "[t]he statutory requirements to cancel registration of a mark under § 1064 are substantively equal to the statutory requirements to oppose the registration of a mark under § 1063." *Australian Therapeutic Supplies*, 965 F.3d at 1373.

belief of damage by the registration of a mark also demonstrates damage proximately caused by the registered mark.

## C. SFM

Applying *Lexmark*'s analytical framework to the circumstances of the underlying case, we reach the same conclusion as the Board—that SFM pleaded allegations sufficient to demonstrate a right to challenge Corcamore's registered mark under § 1064. J.A. 11–12. SFM alleges that because the goods sold under SFM's SPROUTS trademarks and Corcamore's SPROUT trademark are substantially similar, purchasers will believe that Corcamore's use of SPROUT is sponsored by SFM. J.A. 122, ¶ 9. This allegation is well-pleaded[3] and is sufficient to establish a real interest in the cancellation proceeding. *See Selva*, 705 F.2d at 1326 ("[Petitioner] has demonstrated its real interest in the proceeding through its reasonable allegation that its trademark . . . and the trademark [sought to be canceled] are confusingly similar." (citation and internal quotation marks omitted)). SFM's allegation, therefore, identifies an interest falling within the zone of interests protected by § 1064.

SFM also alleges that "[b]ecause the goods sold under SFM's trademark and [Corcamore's] trademark are substantially similar, purchasers will be led to the mistaken belief that SFM's goods and [Corcamore's] goods originate from the same source, or that [Corcamore's] use of SPROUT has been sponsored, authorized, or warranted by SFM, all to SFM's detriment." J.A. 122 ¶ 9. This allegation is well-pleaded and is sufficient to establish proximate

---

[3]    In a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in a petition must be accepted as true and the claims must be construed in the light most favorable to the non-moving party. TBMP § 503.02 (2020); *Young v. AGB Corp.*, 152 F.3d 1377, 1379 (Fed. Cir. 1998).

causation because it demonstrates SFM's reasonable belief of damage resulting from a likelihood of confusion between SFM's SPROUTS mark and Corcamore's SPROUT mark. *See Lipton*, 670 F.2d at 1029 ("To establish a reasonable basis for a belief that one is damaged by the registration sought to be cancelled, a petition may assert a likelihood of confusion which is not wholly without merit.").

We therefore hold that the Board correctly determined that SFM falls within the class of parties whom Congress has authorized to sue under the statutory cause of action of § 1064. *Cf. Lexmark*, 572 U.S. at 137–40. We are not persuaded that we should disturb the result reached by the Board. In other words, SFM is entitled under § 1064 to petition for cancellation of the trademark registration to SPROUT.

## D. Sanctions

We next review the Board's grant of default judgment as a discovery sanction. J.A. 79–91. We review a grant of default judgment as a sanction for abuse of discretion. *See Benedict v. Super Bakery, Inc.*, 665 F.3d 1263, 1268 (Fed. Cir. 2011). An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision. *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51 (Fed. Cir. 1994).

In its Order, the Board analyzed its express and inherent authority to sanction and found that both supported its decision to grant default judgment as a sanction. J.A. 87–91. Corcamore does not challenge the Board's express authority to grant default judgment as a sanction under 37 C.F.R. § 2.120(h) and Fed. R. Civ. P. 37(b)(2). Instead, Corcamore argues that the Court had no factual and legal basis to enter default judgment in the first place.

First, Corcamore contends that the Board abused its discretion by entering default judgment without ever having addressed Corcamore's motion to compel discovery. Second, Corcamore argues that the Board abused its discretion by conducting an *ex parte* teleconference with SFM and, thereafter, denying Corcamore's motion for a protective order to delay a Rule 30(b)(6) deposition. Third, Corcamore argues that the Board abused its discretion by finding that SFM did not receive Corcamore's discovery responses mandated by the Board's February 27, 2018 order. We are not persuaded.

Corcamore's argument regarding its motion to compel is immaterial because, even if true, discovery misconduct by one party does not excuse the discovery misconduct of another party. *See* TBMP § 408.01 ("A party is not relieved of its discovery obligations, including its duty to cooperate, in spite of the fact that an adverse party wrongfully may have failed to fulfill its own obligations."). The record does not support Corcamore's allegation regarding *ex parte* communications because the Board explained that it "terminated the telephone conference" when Corcamore failed to appear and that it denied Corcamore's motion because "[Corcamore] failed to include a statement in support of its good faith effort . . . to resolve the [discovery] dispute." J.A. 45 (Order denying Corcamore's motion for a protective order). Finally, Corcamore failed to follow Rule 2.119 and provided no written explanation for why it failed to effect email service, as required by the Board[4] and under 37 C.F.R. § 2.119(b)(4). Under these circumstances, we see no abuse of discretion by the Board. Accordingly, we conclude that the Board's entry of default judgment as a sanction was not an abuse of discretion.

---

[4]    May 31, 2017, Board Order, 36 TTBVUE 3, *SFM, LLC v. Corcamore, LLC*, Cancellation No. 92060308 (2019).

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  Because SFM meets the statutory requirements to challenge Corcamore's registered mark and because the Board did not abuse its discretion in imposing sanctions, we affirm.

**AFFIRMED**

COSTS

Costs to SFM LLC.