THIS ORDER IS A PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

alv

September 20, 2024

Opposition No. 91281917

*Alfred Sarmento*

*v.*

*Maria Manuela Pinho DE Carvalho*

**Before Heasley, Lynch and English,
Administrative Trademark Judges**.

By the Board:

Applicant seeks registration on the Principal Register of the standard character mark VICE REI for "Wine; Spirits; Liqueurs; Anise liqueur," in International Class 33.[1] Opposer has opposed registration of Applicant's mark on the grounds that (1) there is a likelihood of confusion with his own mark under Section 2(d) of the Trademark Act; (2) that Applicant's application is void ab initio under Section 70(c) of the Trademark Act, 15 U.S.C. § 1141(j) and Article *9quinquies* of the Madrid

---

[1] Application Serial No. 76720845, filed December 27, 2020 under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). The application includes the following translation statement: "The English translation of VICE REI is the mark is viceroy." The application's relationship to a Madrid Protocol extension of protection of an international registration to the United States, Serial No. 79306911, is discussed *infra*.

Protocol based on an improper transformation from an extension of protection;[2] (3) that Applicant is not the rightful owner of the mark at issue; and (4) that Applicant lacked a bona fide intent to use the mark in commerce for the identified goods "at the time of filing Applicant's Mark."[3] Opposer claims ownership of Application Serial No. 90420471 for the mark VICE REI for "Gin; Liqueurs; Wines; Alcoholic beverages, except beer; Brandy spirits; Anise; Dessert wines; Flavored liquors" in International Class 33.[4] Opposer alleges that Applicant's application was cited as a potential bar to the registration of his application.[5]

Applicant, in her answer, admits the following:

> Opposer's Mark was filed on December 28, 2020 and Applicant's Mark has a filing date of December 27, 2020. Since the examiner determined that Applicant's Mark may be cited as a potential bar to registration of Opposer's Mark should it proceed to registration, Opposer's Mark is now suspended pending the disposition of Applicant's Mark.[6]

Applicant otherwise denies the salient allegations in the notice of opposition and alleges certain affirmative defenses.

---

[2] *See generally* The Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks ("Madrid Protocol") and Madrid Protocol Implementation Act of 2002, Pub. L. 107-273, 116 Stat. 1758, 1913-1921 ("MPIA"), implemented in the United States under Trademark Act Sections 60-74, 15 U.S.C. §§ 1141-1141n.

[3] 1 TTABVUE. In this order, the Board cites to the proceeding record by the TTABVUE docket entry number and TTABVUE page number, in accordance with the guidance provided in TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) §§ 106.03, 702.05 and 801.01 (2024). The Board expects that the parties will use this method of citing to the record throughout this proceeding.

[4] 1 TTABVUE 8, ¶ 28.

[5] 1 TTABVUE 8, ¶ 29. None of the material attached to Opposer's notice of opposition is of record as evidence in this proceeding. Trademark Rule 2.122(c), 37 C.F.R. § 2.122(c).

[6] 1 TTABVUE 8, ¶ 29; 6 TTABVUE 5, ¶ 29.

This case now comes up for consideration of Opposer's motion (filed February 5, 2024) for partial summary judgment on his claims that Applicant's application is void ab initio under Section 70(c) of the Trademark Act, 15 U.S.C. § 1141(j) and Article *9quinquies* of the Madrid Protocol and that Applicant is not the rightful owner of the mark.[7] The motion is fully briefed.

## I.     Background

Applicant is a self-described wine producer based in Portugal.[8] She is a former director and partner of Vinicola Vale Do Barrô, S.A. (Vinicola),[9] which since at least as early as 1999-2000 sold VICE REI brand wines in the United States through its exclusive U.S. distributor, Sarmento's Imports & Exports Inc. ("Sarmento's Inc.").[10] Opposer is a director and officer of Sarmento's Inc.[11]

Since at least as early as 2000 through part of 2020, Vinicola owned, through its predecessors-in-interest, Portuguese Trademark Registration No. 182741 for the mark VICE REI (the "Portuguese Registration").[12] This registration was assigned to Applicant on May 20, 2020, nearly a year before Vinicola became insolvent.[13] On December 27, 2020, Applicant applied through Portugal's Instituto Nacional da Propriedade Industrial ("INPI") to the International Bureau of the World Intellectual

---

[7] 15 TTABVUE.

[8] 17 TTABVUE 4.

[9] Vinicola Vale Do Barrô, S.A. changed its name in 2003 from Vinicola Vale do Barrô, LDA.

[10] 17 TTABVUE 4-5.

[11] *Id*. at 5.

[12] *Id*.

[13] *Id*.; *see also*, 15 TTABVUE 42-65 and 67-68.

Property Organization ("WIPO") for (1) an international trademark registration for the VICE REI mark based on her ownership of the Portuguese Registration, and (2) requested an extension of protection to the United States.[14] The International Bureau accordingly issued International Registration No. 1581705 with a December 27, 2020 registration date (the "International Registration").[15] Under the provisions of the Madrid Protocol, Applicant was also granted the requested extension of protection of the International Registration to the United States under Section 66(a) of the Trademark Act, 15 U.S.C. §1141f(a), which became U.S. Application Serial No. 79306911, with a filing date the same as the International Registration date.[16]

Meanwhile, Vinicola entered insolvency proceedings and ultimately was declared insolvent by the Tribunal Judicial De Camarca de Aveiro in Portugal, and an Insolvency Administrator was appointed on April 26, 2021.[17] During the insolvency proceedings of Vinicola in Portugal, the Insolvency Administrator determined that the May 20, 2020 assignment of the Portuguese Registration to Applicant was null and void with retroactive effect, as if the assignment never occurred. On June 25, 2021, Applicant was notified that the assignment of the Portuguese Registration she effected from Vinicola to herself, along with twelve other registrations, constituted "detrimental acts" to the insolvent estate of Vinicola.[18] The Insolvency Administrator

---

[14] *Id.* at 88-104.

[15] *Id.* at 105.

[16] *Id.* at 107-10.

[17] 15 TTABVUE 114-22.

[18] 15 TTABVUE 73-86.

determined that Applicant's assignments were acts detrimental to the insolvent estate because the assignments were performed in "bad faith" and were "carried out solely with the aim of hindering the exercise of Creditors' rights."[19] The Insolvency Administrator then notified the INPI of the seizure of the Portuguese Registration in favor of the insolvent Vinicola, and a seizure order was issued.[20] As a result, Vinicola recovered ownership of the Portuguese Registration on July 23, 2021.[21]

On January 5, 2022, the INPI requested that WIPO cancel the International Registration, stating "[b]y judicial decision, the ownership of the basic [Portuguese Registration] does not correspond to the holder of the International Registration."[22] Applicant filed an appeal with the INPI challenging the decision to request the cancellation of the International Registration.[23]

On January 27, 2022, before Applicant's appeal was addressed, WIPO cancelled the International Registration, stating, "[t]he basic [Portuguese Registration] has ceased to have effect for all goods and/or services following judicial decision."[24] After receiving notification of the cancellation of the International Registration and the renunciation of the extension of protection to the United States, the USPTO issued a

---

[19] *Id.* at 84.

[20] *Id.* at 128-36.

[21] *Id.* at 138-46.

[22] *Id.* at 170-71.

[23] *Id.* at 42-64.

[24] *Id.* at 173.

notice of abandonment for U.S. Application Serial No. 79306911 on February 13, 2022.[25]

Applicant then filed a transformation request on April 11, 2022, requesting that the USPTO transform the application to one based on Trademark Act Section 1(b), with a filing date of December 27, 2020, the filing date of her then cancelled International Registration. The USPTO granted the request, issuing Application Serial No. 76720845, the application involved in this dispute, with the December 27, 2020 filing date.[26]

On July 26, 2022, the INPI rejected Applicant's appeal challenging the request for cancellation of the International Registration.[27] In its decision, the INPI reiterated that the assignment of the Portuguese Registration from Vinicola to Applicant was null and void with retroactive effect and that ownership of the Portuguese Registration was unconditionally resolved in favor of Vinicola.[28] The INPI affirmed that due to Applicant's retroactive non-ownership of the Portuguese Registration, Applicant could not own the International Registration.[29]

The INPI's records indicate that Opposer now is the current owner of the Portuguese Registration, which is currently live, valid, and subsisting.[30] On

---

[25] *Id.* at 175.

[26] *Id.* at 36.

[27] *Id.* at 183-222.

[28] *Id.* at 205.

[29] *Id.* at 221.

[30] *Id.* at 42-65.

November 21, 2022, Opposer filed the notice of opposition against Application Serial No. 76720845, commencing this proceeding.[31]

## II.    The Parties' Arguments

In support of his motion for summary judgment that the involved application is void ab initio under Section 70(c) of the Trademark Act, 15 U.S.C. § 1141(j) and Article *9quinquies* of the Madrid Protocol, and that Applicant is not the rightful owner of the mark, Opposer argues that "[a]s a result of Applicant's retroactive non-ownership of the basic [Portuguese Registration], Applicant cannot own the international trademark registration or the corresponding §66(a) U.S. trademark application."[32] Specifically, Opposer asserts that "it is axiomatic that U.S. Trademark App. No. 76/720,845 created from the transformation of the §66(a) trademark application must be void ab initio due to nonownership, as Applicant transformed an [extension] application she did not own;"[33] that "there is no genuine issue of material fact that Applicant never validly owned the Portug[uese] Registration and was never entitled to the use or benefits of the Madrid System";[34] and that "Applicant has no basis for owning the International Registration or the now-transformed §66(a) U.S. Application obtained from the Madrid System."[35]

---

[31] 1 TTABVUE.

[32] 15 TTABVUE 8.

[33] *Id.*

[34] *Id.* at 20.

[35] *Id.*

Opposer also argues that "[t]he Current U.S. Application is void ab initio because it was created from the improper transformation of the §66(a) U.S. Application in violation of §70(c) of the Trademark Act, 15 U.S.C. §1141(j), and Article *9quinquies*."[36] In particular, Opposer asserts that "Applicant's transformation of the §66(a) U.S. Application was improper as (1) Applicant cannot be the valid holder of the International Registration due to non-ownership of the basic registration; (2) the INPI requested the cancellation of the International Registration due to non-ownership of the basic registration; and (3) the live, valid, and subsisting status of the basic registration."[37] Opposer emphasizes that "Applicant's retroactive non-ownership of the basic registration was the explicit reason on which the INPI requested the cancellation of the International Registration, stating that by judicial decision the ownership of the basic registration did not correspond to the holder of the International Registration."[38] Opposer further maintains that "[t]he INPI's records unequivocally reflect that the Portug[uese] Registration is live and is owned by Opposer, after Opposer acquired the Portug[uese] Registration from Vinicola's successor in interest."[39]

In response, Applicant "strongly disputes" the allegations that she "'fraudulently' assigned the Portuguese Registration from Vinicola to herself"[40] and "'fraudulently'

---

[36] *Id.* at 21.

[37] *Id.*

[38] *Id.* at 23.

[39] *Id.*

[40] 17 TTABVUE 2.

filed the VICE REI International Registration based on her Portuguese trademark registration."[41] Applicant argues that "[o]wnership of the Portuguese Registration and International Registration are irrelevant inasmuch as [U.S.] trademark rights are based on use of the mark in the United States";[42] that "Opposer does not dispute Applicant's predecessor Vinicola used the VICE REI mark in the U.S. for decades";[43] that "Vinicola assigned the [U.S.] rights to Applicant in 2020";[44] and that "Sarmento's [Inc.] was a mere distributor with no rights in the VICE REI mark in the United States."[45]

Applicant also states that an appeal is "currently pending in the Intellectual Property Court (Tribunal da Propriedade Intelectual) of Portugal" regarding the INPI's decision;[46] that she has requested "reversal and nullification of the illegal decision of the…INPI improperly changing the listed owner of Portuguese Reg. No. 182741 (VICE REI) from Applicant to Opposer and erroneously directing the International Bureau (IB) to terminate Applicant's I.R. No. 1581705 (VICE REI)…"[47] and that "the issues surrounding ownership of the Portuguese and International Registration[s] have yet to be 'finally' decided."[48]

---

[41] *Id*. at 3.

[42] *Id*. at 12.

[43] *Id*.

[44] *Id*.

[45] *Id*.

[46] *Id*. at 11.

[47] *Id*.

[48] *Id*.

Applicant also contends that "[t]he Board does not have the jurisdiction to entertain claims involving challenges to transformation requests based on attacks on foreign national or International Registrations, which have nothing to do with the question of ownership of a U.S. trademark"[49] and that "Opposer's claim asserted under 15 U.S.C. §1141(j) and Article *9quinquies* - which solely challenges the U.S. application by attacking ownership of Portuguese Registration no. 182741 and International Registration No. 1581705 - is not a valid ground for opposition."[50]

In reply, Opposer argues that "ownership of a U.S. trademark application filed under §66(a) of Madrid Protocol requires the same trademark applicant to own the International Registration and basic registration upon which the extension of protection is based" and that "[s]ince Applicant does not own the basic registration and International Registration, Applicant cannot enjoy the benefits and priority date that result from a transformation of those rights."[51]

With regard to Applicant's contention that there is no recognized cause of action under the Lanham Act for opposition against an application under 15 U.S.C. §1141(j) and Article *9quinquies*, Opposer counters that "[t]he actual cause of action in Opposer's Motion for Summary Judgment is a void ab initio claim, with U.S. law

---

[49] *Id*. at 3.

[50] *Id*. at 3-4.

[51] 18 TTABVUE 5.

serving as the underlying basis for why the Applicant's trademark application was improperly transformed."[52]

With regard to the pending appeal cited by Applicant in the Tribunal da Propriedade Intelectual of Portugal, Opposer states that "[o]n March 11, 2024, the appeal referenced by Applicant was rejected, and the request for cancellation of the International Registration by INPI was confirmed to have occurred properly."[53]

### III. Analysis

#### A. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Board may not resolve disputes of material fact; it may only ascertain whether a genuine dispute regarding a material fact exists. *See Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. *Opryland USA Inc. v. Great Am. Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods, Inc.*, 22 USPQ2d at 1544. The non-moving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate

---

[52] *Id*. at 6.

[53] *Id*. at 10. Opposer submitted a copy of the order denying this appeal. *Id*. at 75-84.

specific portions of the record or produce additional evidence showing the existence of a genuine dispute of material fact for trial.

### B. Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action under Section 13 or 14 of the Trademark Act must be established in every Board inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020)*; Austl. Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1374 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)). To establish entitlement, a plaintiff must demonstrate (i) an interest falling within the zone of interests protected by the statute, and (ii) a reasonable belief in damage that would be proximately caused by the registration or continued registration of the mark. *See Corcamore*, 978 F.3d at 1303; *Spanishtown Enters., Inc. v. Transcend Res., Inc.*, Can. No. 92070340, 2020 TTAB LEXIS 481, at *4-5 (TTAB 2020).

Opposer meets these requirements for purposes of summary judgment based on Applicant's admission in her answer that the USPTO has cited Applicant's mark as a potential bar to registration of Opposer's mark.[54] *See Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (plaintiff entitled to statutory cause of action based on the USPTO's refusal of

---

[54] 1 TTABVUE 8, ¶ 29; 6 TTABVUE 5, ¶ 29; *see also* 15 TTABVUE 30-33 (printout from the Trademark Status and Document Retrieval Database showing that Opposer owns the pleaded and active application for the mark VICE REI). Proof of entitlement to a statutory cause of action is an element of Opposer's case-in-chief and must be maintained throughout the proceeding. *See Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982); *Apollo Med. Extrusion Techs., Inc. v. Med. Extrusion Techs.*, Inc., 123 USPQ2d 1844, 1848 (TTAB 2017).

its application based on defendant's registrations); *Hole In 1 Drinks, Inc. v. Lajtay*, 2020 USPQ2d 10020, at *3 (TTAB 2020) (evidence of record showing plaintiff's pending application refused registration based on defendant's registration demonstrated entitlement). There is no genuine dispute of material fact that Opposer's interest in opposing the involved application is real and that he is not a mere intermeddler.

### C. Improper Transformation Claim

Under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a), the holder of an international registration may request extension of protection of that registration to the United States under the Madrid Protocol. An applicant who files such a request must declare its bona fide intention to use the mark in the United States, Section 66 of the Trademark Act, 15 U.S.C. § 1141f(a), and the resulting U.S. application is subject to examination and opposition, Section 68 of the Trademark Act, 15 U.S.C. § 1141h. *See Sterling Computs. Corp. v. IBM*, 2023 USPQ2d 1050 (TTAB 2023); *Wirecard AG v. Striatum Ventures B.V.*, 2020 USPQ2d 10086, at *3 n.7 (TTAB 2020) (citing *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 104 USPQ2d 1948, 1950 (TTAB 2012)). *See also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1904 (May 2024) (Request for Extension of Protection of International Registration to the United States).

An international registration is dependent on the basic application and/or basic registration for five years after the date of the international registration. Article 6(3) of the Madrid Protocol. If the basic application is restricted, or abandoned, or if the

resulting registration becomes cancelled, or expired with respect to some or all of the goods or services listed in the international registration, the Office of Origin will notify the International Bureau, and the International Bureau will cancel, to the extent applicable, the international registration. If a request for extension of protection to the U.S. has been made, the International Bureau will notify the USPTO of the cancellation. 15 U.S.C. § 1141j(a). *See also* TMEP § 1902.09 and § 1904.09. Thereafter, the USPTO will cancel in whole, or restrict in part, the corresponding § 66(a) registered extension of protection, or abandon, in whole or in part, the corresponding § 66(a) application. 15 U.S.C. § 1141j(a). *See also* TMEP § 1904.08.

In this situation, the holder of the international registration may "transform" the corresponding pending or registered § 66(a) extension of protection to the United States into an application under § 1 or § 44 of the Trademark Act for registration of the same mark for any or all of the cancelled, restricted, or abandoned goods/services that were covered by the extension of protection. 15 U.S.C. § 1141j(c). *See also* TMEP § 1904.09. The effective filing date of the new § 1 or § 44 application is the international registration date, the date of recordal of the extension of protection if based on subsequent designation, or the date of priority of the request for extension of protection with the International Bureau, whichever is applicable. 15 U.S.C. § 1141j(c); Article *9quinquies* of the Madrid Protocol.

A request for transformation must be filed within three months after the date on which the Article 6(4) cancellation was processed by the International Bureau. *See Id.* The holder must file the request for transformation directly with the USPTO, and

the transformed application will be examined as a domestic application. TMEP § 1904.09(a).[55]

Here, Applicant followed these procedures and transformed her extension of protection to the United States into involved Application Serial No. 76720845, with an effective filing date of December 27, 2020, the registration date of the International Registration.

Opposer's contention that Applicant improperly transformed Application Serial No. 76720845 under § 70(c) of the Trademark Act, 15 U.S.C. § 1141j(c), cannot form the basis of an inter partes challenge to the registrability of the mark. The Office's Madrid Processing Unit (MPU) is charged with processing a request for transformation. Processing a request for transformation is a ministerial act, and there is no substantive examination of the document(s) or the permissibility of the circumstances that prompted the request for transformation. This processing does not include a decision on the legal sufficiency or the legal effect of the document(s) offered for the MPU's consideration.

Under these circumstances, we find Opposer's claim that the application is void ab initio due to the asserted invalidity of the transformation request is not a proper ground for opposing an application. Because the claim is unavailable as a matter of law, we strike this claim from the notice of opposition as futile. *See, e.g. Saber Interactive Inc. v. Oovee Ltd,* 2022 USPQ2d 514, at *2 (TTAB 2022) (on summary

---

[55] *See* TMEP § 1904.09(a) for the requirements for transformation.

judgment, the Board exercised its discretion to review the sufficiency of the notice of opposition, finding plaintiff's sole claim of nonownership is not available against an application filed pursuant to the Madrid protocol); *cf. Lacteos de Honduras S.A. v. Industrias Sula, S. De R.L. de C.V.*, 2020 USPQ2d 10087, at *9 (TTAB 2020) (motion to strike affirmative defense of priority based on Article 7 of the Pan-American Convention granted because such defense is unavailable in an opposition proceeding where opposer has pleaded registrations). Opposer's motion for summary judgment on this claim is therefore moot.

### D. Non-Ownership Claim

The involved application is based on Applicant's asserted bona fide intent to use the mark in commerce under Section 1(b), 15 U.S.C. § 1051(b). There is no statutory requirement that the filer of an intent-to-use application be the owner of the mark at the time it files an intent-to-use application; rather, the filer avers that: "The signatory believes that the applicant is entitled to use the mark in commerce. The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application." Therefore, a claim that Applicant was not the rightful "owner" of the mark as of the effective filing date of the involved intent-to-use application is not available. *See Hole In 1 Drinks, Inc. v. Michael Lajtay*, 2020 USPQ2d 10020, at *5 (citing *Norris v. PAVE: Promoting Awareness, Victim Empowerment*, 2019 USPQ2d 370880, at *4 (TTAB 2019)).[56]

---

[56] The parties should not, however, that "[b]ecause a bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under Section 1(b), the lack of such intent is a basis on which an opposer may challenge an

In view of the foregoing, we strike the non-ownership claim from the pleading. Opposer's motion for summary judgment on this claim is moot.

## IV.    Proceedings Resumed[57]

Opposer's remaining claims are priority and likelihood of confusion under Section 2(d) of the Trademark Act and lack of bona fide intent to use the mark as of the effective filing date of the application under Trademark Act Section 1(b). Proceedings are resumed. Discovery remains closed. Dates are reset as follows:

| | |
|---|---|
| Plaintiff's Pretrial Disclosures Due | 10/22/2024 |
| Plaintiff's 30-day Trial Period Ends | 12/6/2024 |
| Defendant's Pretrial Disclosures Due | 12/21/2024 |
| Defendant's 30-day Trial Period Ends | 2/4/2025 |
| Plaintiff's Rebuttal Disclosures Due | 2/19/2025 |
| Plaintiff's 15-day Rebuttal Period Ends | 3/21/2025 |
| Plaintiff's Opening Brief Due | 5/20/2025 |
| Defendant's Brief Due | 6/19/2025 |
| Plaintiff's Reply Brief Due | 7/4/2025 |
| Request for Oral Hearing (optional) Due | 7/14/2025 |

---

applicant's mark." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1898 (Fed. Cir. 2015).

[57] The parties should note that the evidence submitted in support of or in opposition to Opposer's motion for summary judgment is of record only for consideration of that motion. To be considered at final hearing, any such evidence must be properly introduced during the appropriate trial period. *See Levi Strauss & Co. v. R. Josephs Sportswear Inc.*, 28 USPQ2d 1464, 1465 n.2 (TTAB 1993); *Pet Inc. v. Bassetti*, 219 USPQ 911, 913 n.4 (TTAB 1983); *Am. Meat Inst. v. Horace W. Longacre, Inc.*, 211 USPQ 712, 716 n.2 (TTAB 1981).

**Important Trial and Briefing Instructions**

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). **Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing.** *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).